**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CLASS REPRESENTATION

KIMBERLY E. FERRON,

      Plaintiff,

                                CASE NO.: 20-CV-62136-RAR

vs.

KRAFT HEINZ FOODS COMPANY,

      Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff Kimberly E. Ferron, on behalf of herself and a class of similarly situated persons, and with the consent of Defendant, KRAFT HEINZ FOODS COMPANY (hereinafter referred to as "Defendant" or "KRAFT"), respectfully requests the entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement (hereinafter referred to as "Settlement" or "Settlement Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

**I.    INTRODUCTION**

      The Settlement makes available a Settlement Fund of US $16,000,000 (which includes attorneys' fees, costs, and administration fees and costs including cost of notice to the Class) in the aggregate to provide cash benefits to Settlement Class Members who

_____

[1] The Settlement Agreement is attached hereto as **Exhibit A**.  All capitalized terms used herein have the same definitions as those defined in the Agreement.

timely file Claims by the Claims Deadline and who provide all the necessary information to the Settlement Administrator.  If approved, the Settlement will bring an end to what would likely be a contentious and prolonged litigation with an uncertain outcome.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval and appointment of the Settlement Administrator;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses; and

   d. The procedure for opting-out of or objecting to the Settlement;

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* the Declaration of L. DeWayne Layfield, a copy of which is attached hereto as **Exhibit B**.  First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendant's ability and demonstrated willingness to vigorously defend the case.  Second, the Settlement was reached only after first engaging in extensive pre-suit investigation,

initiating litigation, and extensive arm's-length negotiations both before and during mediation with Hon. Wayne Anderson (Ret.).

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

**1.1**    This case arises out of Plaintiff's allegations that Defendant deceptively and unlawfully packaged, marketed, and labeled their ground coffee, sold under the following names:  Maxwell House and Yuban.  A list of the products covered by this proposed class action settlement is attached as **Exhibit "C"** to the Settlement Agreement, and said products will collectively be referred to herein as the "Products."  Specifically, Plaintiff alleged that Defendant deceptively and unlawfully labeled, packaged, and marketed the Products as containing enough coffee such that it makes a range of cups of coffee depending on the brewing instructions that are followed; however, contrary to these representations, the Products allegedly do not contain enough ground coffee to make the stated number of cups when following the brewing instructions on the Product label. Plaintiff's original Class Action Complaint was filed on July 24, 2020, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, and includes claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*  Subsequently, Plaintiff filed an Amended Class Action Complaint on December 1, 2020, in the United States District Court, Southern District of Florida, which also includes claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* and similar statutes in other states.

The Settlement Agreement, which is attached hereto as Exhibit "A," is a product of engagements between the Parties, which was preceded by intensive case investigation by Plaintiff's counsel. Defendant disputes Plaintiff's counsel's investigation and denies that its products are mislabeled in any way.  The Parties were engaged in intensive settlement discussions, which included formal mediation, which ultimately resulted in the Settlement Agreement.

### III.   NATURE OF THE SETTLEMENT

As explained in the proposed Settlement Agreement, Defendant agreed to provide both substantial monetary relief and significant injunctive relief that will correct the issue identified in the Complaint. Defendant has agreed to a two-tiered structure for monetary relief to class members, under which Defendants will provide cash benefits to Settlement Class Members who timely file Claims by the Claims Deadline and who provide all the necessary information to the Settlement Administrator.  Defendant has agreed to pay a maximum of $4.80 per Household to Settlement Class Members who do not have a valid Proof of Purchase and a maximum of $25.00 per Household to Settlement Class Members who provide a valid Proof of Purchase. Defendant will provide a Settlement Fund of US $16,000,000 (which includes attorneys' fees, costs, and administration fees and costs including cost of notice to the Class) in the aggregate. In addition, Defendants will provide Programmatic Relief through either (1) the removal of the Challenged Language from the labels of the Products, or (2) the revision of the lower and upper limits of the serving ranges to correspond to the cups of coffee that can be brewed following the single cup directions (lower limit) and the cups of coffee that can be brewed using the 10 cup directions (upper limit) (collectively the "Injunctive Relief").

IV.   **MATERIAL TERMS OF THE SETTLEMENT**

The following is a summary of the material terms of the Settlement.

a.   **The Settlement Class**

The Parties agreed to and request the certification of the class as defined in Section II, Paragraph 2.49 of the Settlement Agreement as follows:

**All Persons who purchased any Products in the United States during the Class Period. Excluded from the Settlement Class are the following: (a) Persons who purchased or acquired any Products for resale; (b) the Released Parties; (c) all Persons who file a timely and valid Opt-Out; (d) Plaintiff's Counsel and Defendant's Counsel; (e) federal, state, and local governments (including all agencies and subdivisions, but excluding employees not otherwise excluded hereunder); and (f) the judicial officers and courtroom staff overseeing the Action.**

Further, Section II, Paragraph 2.16 of the Settlement Agreement defines the "Class Period" as "the period of time commencing August 27, 2015 and ending on the date of Preliminary Approval of the Settlement by the Court."

b.   **Settlement Consideration**

i.   *Monetary Relief*

Pursuant to Section II, Paragraph 2.51 of the Settlement Agreement, Defendant has agreed to provide a Settlement Fund of $16,000,000 in the aggregate. The following expenses and costs shall be deducted from the Settlement Fund: (a) the amount awarded to Class Counsel for attorneys' fees and costs/expenses; (b) the cash portion of the

Benefit; and (c) the reasonable and necessary claims administration costs including the cost of notice to the Class.

Of the aggregate amount, and Pursuant to Section V. Paragraph 5.2 of the Settlement Agreement, Defendant will pay or cause to be paid Valid Claims based on which of the following two Tiers the Settlement Class Member elects and for which the Settlement Class Member qualifies:

     a) <u>Tier 1</u>. Settlement Class Members who elect to fill out the Claim Form section for Tier 1 and who do not have valid Proof of Purchase may recover $.80 per Unit purchased, up to a maximum of 6 Units per Household; or

     b) <u>Tier 2</u>. Settlement Class Members who elect to fill out the Claim Form section for Tier 2 and who provide valid Proof(s) of Purchase may recover $.80 per Unit purchased for the number of Units for which a valid Proof of Purchase has been provided, up to a maximum reimbursement of twenty-five dollars ($25.00) per Household.

       *ii.* <u>*Non-Monetary Relief*</u>

In addition to the monetary relief described above, and as described in detail in the Settlement Agreement, Defendant has agreed to either (1) remove the Challenged Language from the Labeling of the Products (referred to herein as "Option 1"); or (2) revise the lower and upper limits of the serving ranges to correspond to the cups of coffee that can be brewed following the single cup directions (lower limit) and the cups of coffee that can be brewed using the 10 cup directions (upper limit), as confirmed by a third-party laboratory (referred to herein as "Option 2").  The Settlement Agreement provides specific

governing criteria for the programmatic relief depending on if "Option 1" or "Option 2" is selected.

  **c.**  <u>**The Notice Program**</u>

    The Settlement Agreement provides for a Publication Notice, Settlement Notice, a Settlement Website, and telephonic support of the notice campaign. The full cost of notice and administration and effectuation of the Settlement Agreement shall be paid by Defendants through the Settlement Fund.

    Pending this Court's approval, Heffler Claims Group, will serve as Settlement Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of four different components: (1) Publication Notice; (2) Settlement Notice; (3) a Settlement Website; and (4) a toll-free number for telephonic support of the notice campaign. The forms of the proposed notices agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as exhibits.

    The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application;  the date of the Final Approval Hearing; and information regarding the Settlement Website where Settlement Class members may access the Agreement; and other important documents.

### i.      Publication Notice

A copy of the short-form Publication Notice is attached to the Settlement Agreement as part of composite **Exhibit "B."** Individuals who receive the Publication Notice will have the option of mailing in the Claim Form or visiting the Settlement Website (www.groundcoffeesettlement.com) to download and file or electronically file a Claim Form.

### ii.     Settlement Notice

The Settlement Notice and the Publication Notice will all contain the address for the Settlement Website, www.groundcoffeesettlement.com. On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the short-form Settlement Notice. A copy of the Long Form Notice is attached to the Settlement Agreement as part of composite **Exhibit B**. Further, the Long Form Notice will be sent to all Settlement Class members who contact the Settlement Administrator by telephone or email and request a copy.

### iii.    Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish the Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. The Settlement Website will be established by the Class Notice Date. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Defendant agree to post or that the Court orders be posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval.

The Settlement Administrator will establish the Settlement Website no later than thirty (30) days after the entry of the Preliminary Approval Order and shall publish the Publication Notice pursuant to the Media Plan.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries.

### d.    Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim their portion of the Settlement Fund. *See* Ex. "B," Layfield Decl. at ¶ 3.  Settlement Class members may make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as **Exhibit "A**." Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) information concerning the Products purchased and whether Proof of Purchase is being submitted; and (4) a current contact telephone number. Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to receive the cash settlement payment, as described in the Settlement Agreement, subject to Final Approval of the settlement by the Court. Untimely or otherwise deficient Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund payment. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class, they will benefit from the Injunctive Relief, and their claims will be released. Claim Forms can be submitted until

approximately 15 days following the Final Approval Hearing, depending on exact calendaring by the Court.

**e.** **Allocation of the Settlement Fund**

Defendant will make available certain cash funds on a per class member basis under a two (2) tier system, as set forth below.

a) <u>Tier 1</u>. Settlement Class Members who elect to fill out the Claim Form section for Tier 1 and who do not have valid Proof of Purchase may recover $.80 per Unit purchased, up to a maximum of 6 Units per Household. Each Tier 1 Settlement Class Member who submits a timely, valid, correct and verified Claim Form by the Claim Deadline in the manner required by this Agreement, making all the required affirmations and representations, shall be sent a Benefit Payment by the Administrator, based on the calculations identified above. For clarity as defined in the Settlement Agreement the Benefit Payment may be either a paper check or an electronic payment at the option of the Class Member.

b) <u>Tier 2</u>. Settlement Class Members who elect to fill out the Claim Form section for Tier 2 and who provide valid Proof(s) of Purchase may recover $.80 per Unit purchased for the number of Units for which a valid Proof of Purchase has been provided, up to a maximum reimbursement of twenty-five dollars ($25.00) per Household. Each Tier 2 Settlement Class Member who submits a timely, valid, correct and verified Claim Form by the Claim Deadline in the manner required by this Agreement, making all the required

affirmations and representations, shall be sent a Benefit Payment by the Administrator, based on the calculations identified above.

The allocation of settlement funds shall be less any Notice and Administration Costs, Attorneys' Fees and Expenses. Settlement Class Claimants will be sent their Claim Settlement Payments to the address or account they submitted on their Claim Form. The Claims Administrator shall mail or transmit the Benefit Payment to Class Members who submit timely and valid Claim Forms within sixty (60) days of the Effective Date.

      **f.**    **<u>Settlement Administrator</u>**

Pending this Court's approval, Heffler Claims Group shall serve as the Settlement Administrator. The Settlement Administrator's responsibilities may include (but are not necessarily limited to):

    i.    providing Publication Notice;

    ii.    providing long-form Settlement Notice to Settlement Class members;

    iii.    establishing and maintaining the Settlement website;

    iv.    establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

    v.    receiving, evaluating, and processing Claim Forms;

    vi.    advising Settlement Class members if their Claim Forms are deficient;

    vii.    providing weekly reports about the Notice plan and number and identity of opt-outs (if any) to Class Counsel and Defendant's counsel;

    viii.    establishing and maintaining an automated and toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and

       answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

ix.     responding to any Settlement Class member inquiries;

x.     processing all requests for exclusion from the Settlement Class;

xi.     at Class Counsel's request, and in advance of the Final Approval Hearing, preparing a declaration to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class, the total number of claims made, and any additional information that may be relevant to the Court's adjudication of the issues at the Final Approval Hearing; and

xii.    distributing Settlement Fund payments.

**g.**    **Opt-Out and Objection Procedures**

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendant, subject to any defenses that Defendant may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 60 days after the Class Notice Date. The Settlement Administrator will communicate any opt-out requests to Class Counsel and Defendant's Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those persons will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 60 days after the Class Notice Date. Pending Court approval, for an objection to be considered by the Court, it must include the following:

a) The case name and number, *Kimberly E. Ferron v. Kraft Heinz Foods Company,* Case No.  0:20-cv-62136-RAR, United States District Court for the Southern District of Florida.

b) The name, address, telephone number, and, if available, the email address of the Person objecting;

c) The name and address of the lawyer(s), if any, who is representing the Person making the Objection or who may be entitled to compensation in connection with the Objection;

d) A detailed statement of Objection(s), including the grounds for those Objection(s);

e) Copies of any papers, briefs, or other documents upon which the Objection is based;

f) A statement of whether the Person objecting intends to appear at the Final Approval Hearing, either with or without counsel;

g) The identity of all counsel (if any) who will appear on behalf of the Person objecting at the Final Approval Hearing and all Persons (if any) who will be called to testify in support of the Objection;

h) A statement of his/her membership in the Settlement Class, including all information required by the Claim Form;

i) The signature of the Person objecting, in addition to the signature of any

attorney representing the Person objecting in connection with the Objection; and

j)   A detailed list of any other objection by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years. If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement. This information is requested in order to assist the Court in determining whether the Objection is made by a professional objector seeking financial consideration for their efforts. Failing to provide this information will not affect the validity of the Objection but may result in the Court presuming that the Objection is made by a professional objector.

**h.   Release of Claims**

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members have agreed to the release as set forth in the Settlement Agreement.

**i.   Class Counsel Fees and Expenses**

Defendant has agreed to pay, as an Attorneys' Fees and Costs Award to Class Counsel, the amount of three million nine hundred thousand dollars ($3,900,000), which will cover the attorneys' fees, expenses and costs awarded by the Court to Class Counsel for all the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by them and their experts, staff, and consultants

in connection with the Action.  Defendant has agreed not to oppose Plaintiff's request for attorneys' fees and costs in the above-referenced amount.

## V.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.  The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for them

to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

### b.     The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel.

Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. *See* Ex. "B," Layfield Decl. at ¶¶ 2-13.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of prolonged litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendant believes that Plaintiff's claims are unfounded, denies any liability, would vehemently oppose class certification, and is willing to litigate this matter vigorously through trial and all possible appeals. *See* Ex. "B," Layfield Decl. at ¶ 5.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to prolonged litigation that include, but are not limited to, the risks, as well as time and expenses associated with completing trial and any appellate review. *See* Ex. "B," Layfield Decl. at ¶ 6.

     **c.**    **The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[2] *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial,

_____

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

and are the result of informed, arms-length negotiations by experienced Class Counsel");
FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004).

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. *See* Ex. "B," Layfield Decl. at ¶ 7. Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases in both federal and state court. *See* Ex. "B," Layfield Decl. at ¶ 8. Class Counsel zealously represented their client and engaged in intensive case investigation, expert testing, data analysis, extensive legal research, intensive settlement discussion, and representation at formal mediation. *See* Ex. "B," Layfield Decl. at ¶ 9.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions, including a class action that was factual similar to the present Action, and a familiarity with the facts of the Action. *See* Ex. "B," Layfield Decl. at ¶¶ 8-9. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in intensive case investigation, expert testing, and data analysis. *See* Ex. "B," Layfield Decl. at ¶ 9. Class Counsel's investigation, expert testing, and data analysis, together with their experience in litigating and settling a class action that was factual similar to the present action, enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Dasher v. RBC Bank United States (In Re: Checking Account Overdraft Litigation),* 2020 U.S. Dist. LEXIS 142012, *35 (S.D. Fla. August, 2020) ("Class Counsel were well-positioned to evaluate the strengths and

weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of their litigation and settlement of similar claims").

### d.   The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### i.   Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case but are also pragmatic in their awareness of numerous defenses available to Defendant, intense disagreement over the validity of Plaintiff's investigation and data analysis, and Defendant's financial resources, and the risks inherent in trial and post-judgment appeal. *See* Ex. "B," Layfield Decl. at ¶¶ 10-11.  The success of Plaintiff's claims turn on questions that would arise at summary judgment, trial, and during an inevitable post-judgment appeal.  In particular, Plaintiff was aware that Defendant had commissioned third-party testing of the Products whose results, if believed by the trier of fact, undermined Plaintiff's claims.  Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. *See* Ex. "B," Layfield Decl. at ¶ 12. Indeed, the Settlement provides Plaintiff and putative class members with the certainty of recovery in an otherwise very uncertain world.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (stating the fact that "any resolution favorable to Plaintiffs here would certainly be followed by appellate proceedings, delaying class recovery . . . strongly

favor[s] approval of a negotiated settlement."). This Settlement provides substantial relief to Settlement Class Members, without further delay.

### ii.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair

When evaluating the terms of the compromise in relation to the likely benefits of a successful trial, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The Settlement Fund made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loom in the absence of settlement including, but not limited to, a motion for class certification, Defendant's assertion of various legal challenges, a motion for summary judgment, trial, and appellate review following a final judgment.

There can be no doubt that this Settlement is a fair, reasonable and adequate recovery for the Settlement Class in light of Defendant's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. *See* Ex. "B," Layfield Decl. at ¶ 13.

### iii.  Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they may be entitled in a prompt and efficient manner. *See* Ex. "B," Layfield Decl. at ¶ 14.

### iv.  Stage of Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.  "Certainly, courts favor early settlement." *Id.*  Additionally, "vast formal discovery need not be taken." *Id.*  Courts "often see[] cases which were 'over discovered.'  . . . In addition to wasting the time of th[e] Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation and may often serve as a vehicle to harass a party." *Cotton*, 559 F.2d at 1332.  "Discovery in its most efficient utilization should be totally extra-judicial." *Id.*  "Being an extra judicial process, **informality in the discovery of information is desired**." *Id.* (emphasis added).  "It is too often forgotten that a conference with or telephone call to opposing counsel may often achieve the results sought by formal discovery." *Id.*

The Settlement was reached only after intensive case investigation by the parties, including detailed and complex third-party expert testing of the Products by both Parties, data analysis, extensive legal research, intensive settlement discussion, and a detailed

and lengthy formal mediation.  As a result, Plaintiff had access to more than sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.  Consequently, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. *See* Ex. "B," Layfield Decl. at ¶ 15.

> ### e.     Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to be issued to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the

members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of at least hundreds-of-thousands, of individuals, located across the United States who purchased Products during the Class Period, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact—centering on Defendant's actions of labeling, packaging, and marketing the Products as containing enough coffee such that it makes a range of cups of coffee depending on the brewing instructions that are followed—that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality

satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

Plaintiff is typical of absent Settlement Class members because she purchased Products with representations that it contained enough coffee such that it makes a range of cups of coffee depending on the brewing instructions that are followed, when in fact the Products did not, and therefore Plaintiff claims to have suffered the same injuries as the absent Settlement Class members.   Additionally, Plaintiff is typical of absent Settlement Class members because Plaintiff and the absent Settlement Class members will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).

Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are

represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, including a factual similar class action. *See* Ex. "B," Layfield Decl. at ¶ 8.  Class Counsel devoted substantial time and resources to vigorous investigation, third-party expert testing of the Products, data analysis, and intensive settlement negotiations of the Action.  Accordingly, Plaintiff requests that L. DeWayne Layfield, Lydia S. Zbrzeznj, Nicholas T. Zbrzeznj, and Joel Oster be appointed Class Counsel to represent the Class.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of potentially tens-of-thousands, up to hundreds-of-thousands, of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

f.     **The Court Should Approve the Proposed Notice Program**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best

practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application, for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## VI.   <u>Proposed Schedule of Events</u>

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final

Approval Hearing or the date on which the Preliminary Approval Order is entered. Class

Counsel propose the following schedule:

| Event | Date |
|---|---|
| Notice Date | 30 days following Preliminary Approval |
| Objection Deadline and Opt-Out Deadline | 60 days following Notice Date |
| Deadline for filing Application for an Award of Attorneys' Fees and Expenses | 14 days prior to Objection Deadline |
| Deadline for filing Motion for Final Approval of the Settlement | 14 days prior to Final Approval Hearing |
| Deadline for Responses to Objections to the Settlement and the Application for an Award of Attorneys' Fees and Expenses | 7 days prior to Final Approval Hearing |
| Final Approval Hearing | Approximately 90 days following Preliminary Approval and at least 70 days following Notice Date |
| Last day for Claim Form to be received (by mail) or submitted (electronically) | 85 days following Notice Date |

## VII.   Conclusion

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the

Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes

the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of

Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve

the form and content of the Notices and Claim Form, attached to the Settlement

Agreement; (4) approve and order the opt-out and objection procedures set forth in the

Agreement; (5) appoint Plaintiff as Class Representative; (6) appoint as Class Counsel

L. DeWayne Layfield, Lydia S. Zbrzeznj, Nicholas T. Zbrzeznj, and Joel Oster and their

associated  law firms; (7) schedule a Final Approval Hearing; and (8) grant the parties

such further and additional relief as the Court deems just and proper. A Proposed

Preliminary Approval Order is attached hereto as **Exhibit "C."**

Date: December 9, 2020

Respectfully submitted:


SOUTHERN ATLANTIC LAW GROUP, PLLC

By:  *s/Lydia Sturgis Zbrzeznj*
Lydia S. Zbrzeznj
Florida Bar No. 98181
Nicholas T. Zbrzeznj
Florida Bar No. 98180
99 6th Street SW
Winter Haven, FL 33880
Telephone: (863)656-6672
Facsimile: (863)301-4500
Emails: lydia@southernatlanticlaw.com
kara@southernatlanticlaw.com
ATTORNEYS FOR PLAINTIFF

Joel Oster
Of Counsel
The Law Office of Howard W. Rubinstein
1281 N. Ocean Dr. Apt. 198
Singer Island, FL 33404
Telephone: 832-715-2788
Fax: 561-688-0630
Emails: howardr@pdq.net
ATTORNEY FOR PLAINTIFF

L. DeWayne Layfield, Esq.
Law Office of L DeWayne Layfield, PLLC
P.O. Box 3829
Beaumont, Texas 77704
Telephone: 407-832-1891
Fax: 866-280-3004
Email: dewayne@layfieldlaw.com
ATTORNEY FOR PLAINTIFF

Todd D. Carpenter
Carlson Lynch LLP
1350 Columbia St., Ste. 603
San Diego, California 92101
tcarpenter@carlsonlynch.com
Tel: (619) 762-1900
ATTORNEY FOR PLAINTIFF

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
tlfisher@bursor.com
Tel: (925) 300-4455
ATTORNEY FOR PLAINTIFF

Benjamin Heikali
Faruqi & Faruqi, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
bheikali@faruqilaw.com
Tel: (424) 256-2884
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that it is being served on all counsel of record via the Court's ECF notification system.

SOUTHERN ATLANTIC LAW GROUP, PLLC

By:   s/Lydia S. Zbrzeznj
Lydia S. Zbrzeznj
Florida Bar No. 98181
99 6th Street SW
Winter Haven, FL 33880
Telephone: (863) 656-6672
Facsimile: (863) 301-4500
Emails: lydia@southernatlanticlaw.com
kara@southernatlanticlaw.com