**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CLASS REPRESENTATION

KIMBERLY E. FERRON, individually and
on behalf of all others similarly situated,

        Plaintiff,

                                 CASE NO. 20-CV-62136

vs.

KRAFT HEINZ FOODS COMPANY,

        Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS SETTLEMENT,**
**AND INCORPORATED MEMORANDUM OF LAW**

        This Court having preliminarily approved the settlement of this case on January 19, 2021, Plaintiff, KIMBERLY E. FERRON, by and through the undersigned counsel, now moves for final approval of the settlement of this class action. In its Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class, the Court directed that notice be provided to the Settlement Class and established deadlines for filing an Application for an Award of Attorneys' Fees and Expenses and a Motion for Final Approval. [D.E. 41]. Pursuant to the Court's Order, the Parties proceeded to provide notice to the Settlement Class through the claims administrator, and Plaintiff timely filed Plaintiff's Application for Attorneys' Fees, Expenses, and Costs on March 22, 2021 [D.E. 45], timely submits this Unopposed Motion for Final Approval of Class Settlement, and Incorporated Memorandum of Law, and will on June 14, as ordered, respond to the one handwritten letter received that is critical of this settlement.

WHEREFORE, Plaintiff, KIMBERLY E. FERRON,  and Class Counsel now request that the Court:   (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and Rule 23(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint Law Office of DeWayne Layfield, PLLC, Southern Atlantic Law Group, PLLC, and Law Office of Howard W. Rubinstein, as Class Counsel; (5) award the requested attorneys' fees and costs outlined in Plaintiff's Application for Attorneys' Fees, Expenses, and Costs [D.E. 45]; and (6); enter Final Judgment dismissing the Action with prejudice.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### I.    INTRODUCTION

This case arises out of Plaintiff's allegations that Defendant deceptively and unlawfully packaged, marketed, and labeled its ground coffee sold under the Maxwell House and Yuban brands.  A list of the products covered by this proposed class action settlement is attached as Exhibit "C" to the Settlement Agreement, and these products will collectively be referred to herein as the "Products."  Specifically, Plaintiff alleged that Defendant deceptively and unlawfully labeled, packaged, and marketed each of the Products as containing enough coffee such that each made a range of cups of coffee depending on the brewing instructions that are followed; however, contrary to these representations, the Products allegedly do not contain enough ground coffee to make the stated number of cups when following the brewing instructions on the Product label. Plaintiff's original Class Action Complaint was filed on July 24, 2020, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, and includes claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §

501.201 *et seq*. Defendant then removed the action to federal court. Subsequently, Plaintiff filed an Amended Class Action Complaint on December 1, 2020, in the United States District Court, Southern District of Florida, which also includes claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. and similar statutes in other states.

## II.     REQUEST FOR FINAL APPROVAL OF THE SETTLEMENT

### A. <u>Summary of the Settlement Terms</u>

The Settlement terms are detailed in the Settlement Agreement attached hereto as **Exhibit "A."**[1] The following is a summary of the Settlement Agreement's material terms.

#### 1.  *The Settlement Class*

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as: "All Persons who purchased any Products in the United States during the Class Period." Exhibit A, p. 11, Section II, 2.49. Excluded from the Settlement Class are: (a) Persons who purchased or acquired any Products for resale; (b) the Released Parties; (c) all Persons who file a timely and valid Opt-Out; (d) Plaintiff's Counsel and Defendant's Counsel; (e) federal, state, and local governments (including all agencies and subdivisions, but excluding employees not otherwise excluded under the Agreement); and (f) the judicial officers and courtroom staff overseeing the Action. *Id.*

---

[1] All capitalized terms used herein have the same meanings as those defined in the Settlement Agreement.

2.  *Monetary Relief*

The Settlement requires Defendant to make available up to Sixteen Million Dollars ($16,000,000.00) for the benefit of the Settlement Class.  Exhibit A, p. 11, Section II, 2.50. To receive a portion of the Settlement Fund, Settlement Class members must properly complete an online or paper Claim Form, which must be received within 85 days following the Notice Date. Exhibit A, Exhibit D, p. 13, ¶2. "Notice Date" means the date on which the Settlement Administrator begins disseminating the Settlement Notice consistent with the Preliminary Approval Order. Exhibit A, p. 8, 2.28. The Preliminary Approval Order set the Notice Date as February 17, 2021, and the deadline for receipt of a Claim Form was May 18, 2021.  [D.E. 41, p. 12].

Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form shall receive payment from Defendant in the following amount:

a) Tier 1. Settlement Class Members who elect to fill out the Claim Form section for Tier 1 and who do not have valid Proof of Purchase may recover $.80 per Unit purchased, up to a maximum of 6 Units per Household; or

b) Tier 2. Settlement Class Members who elect to fill out the Claim Form section for Tier 2 and who provide valid Proof(s) of Purchase may recover $.80 per Unit purchased for the number of Units for which a valid Proof of Purchase has been provided, up to a maximum reimbursement of twenty-five dollars ($25.00) per Household.

Exhibit A, p. 17, 5.2.

Defendant will issue Benefit Payments on Valid Claims.  Exhibit a, p. 21, 6.5(g).

### 3. *Programmatic Relief*

In addition to the monetary relief described above, and as described in detail in the Settlement Agreement, Defendant has agreed to either (1) remove the Challenged Language from the Labeling of the Products (referred to herein as "Option 1"); or (2) revise the lower and upper limits of the serving ranges to correspond to the cups of coffee that can be brewed following the single cup directions (lower limit) and the cups of coffee that can be brewed using the 10 cup directions (upper limit), as confirmed by a third-party laboratory (referred to herein as "Option 2"). Exhibit A, pp. 15-16, 5.1. The Settlement Agreement provides specific governing criteria for the programmatic relief depending on if "Option 1" or "Option 2" is selected.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members and possible members of the class will be deemed to have released Defendant from claims related to the subject matter of the Action.  The detailed release language is found in Section XII of the Agreement. Exhibit A, pp. 31-33.

### 4. *Notice Program*

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fees application and their rights to opt-out of or object to the Settlement. *See* Declaration of Jeanne C. Finegan of Kroll Notice Media Solutions, an affiliate company of Kroll Settlement Administration, f/k/a Heffler Claims Group (hereinafter "Kroll Media") which is attached hereto as **Exhibit "B,"** and cited herein as

"Finegan Decl"; *see also* Declaration of L. DeWayne Layfield, attached as **Exhibit "C"** and cited herein as "Layfield Decl."

The Notices and Notice Program constituted, the best practicable and sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23, and the constitutional requirement of due process.

### 5. Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Class Counsel are entitled to request attorneys' fees and costs of up to $3,900,000.00 which is approximately 24.4% of the Settlement Fund. Exhibit A, p. 22, 7.1.   Court approval of the attorneys' fees and cost award was not a condition of settlement. *Id.* at 7.2.  The Parties negotiated and reached an agreement regarding fees and costs only after agreeing on all other material terms of the Settlement and as part of a mediation process overseen by Hon. Wayne Andersen (US District Judge Ret.).  Layfield Decl, ¶¶9-11. Plaintiff timely filed Plaintiff's Application for Attorneys' Fees, Expenses, and Costs on March 22, 2021 [D.E. 45], in support of the request for an award of attorneys' fees, expenses, and costs totaling $3,900,000.00.

### B. Argument

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).

As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also*

*Jairam v. Colourpop Cosmetics, LLC*, 2020 LEXIS 181656 at *8 (S.D. Fla. Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements"). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

> In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).

*Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011); *see also Jairam*, 2020 LEXIS 181656 at *9 (explaining the district court should rely upon the judgment of experienced counsel for class parties and should be hesitant to substitute its own judgment for that of counsel).

Under Rule 23(e)(1), this Court should approve the class-action settlement if it is fair, reasonable and adequate. *Fresco v. Auto Data Direct, Inc.*, 2007 LEXIS 37863, at *12 (S.D. Fla. May 14, 2007). Approval of a proposed settlement is a two-step process. First, the Court decides whether to preliminarily approve the proposed settlement, which requires a preliminary determination of the fairness, reasonableness, and adequacy of

the settlement terms. *Id.* Second, at the final fairness hearing, the court makes a final decision on whether to approve the proposed settlement. *Id.*

The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted because the settlement is fair, reasonable, and adequate, for the reasons addressed in detail, below.

1. ***Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.***

Pursuant to the Court's Preliminary Approval Order, beginning on or about February 17, 2021, the Settlement Administrator disseminated the Settlement Notice by setting up a state-of-the-art notice campaign, which included launching the Settlement Website, publication notice, online and mobile advertising, and launching a toll-free telephone number through which Class Members can access Settlement information. A complete summary of the notice process and its success is set out in the declaration of Jeanne C. Finegan, which is attached as Exhibit "C" to this Motion. Specifically, Ms. Finegan describes the Settlement Administrator's creation and hosting of a dedicated website entitled www.groundcoffeesettlement.com, as well as the publication of both Long Form and Claim Forms to Class Members, which informed Class Members of their rights, including the process to seek exclusion from the Settlement, object to the Settlement, and instructions on how to submit a Claim Form as well as the deadlines associated with those actions.  As of May 20, 2021, there have been 637,753, page views at the website averaging three pages per user. *See* Finegan Decl. ¶¶14-17. The Settlement Administrator has also maintained a toll-free number (833-644-1596), which Class Members can call to obtain additional information regarding the Settlement using both Live Operators and an IVR system. *Id.* at ¶15. As of May 20, 2021, 884 Class

Members called the IVR, and 513 Class Members spoke to Live Operators. *Id.*  The Print Publication Notice was published as a half-page, black and white ad in *People Magazine* on March 5, 2021, and *Good Housekeeping* on March 23, 2021, and as a full-page, black and white ad in Readers Digest on March 16, 2021. *Id.* at ¶20. Additionally, approximately 49 million online display, search and social media ads were served, which were specifically targeted to reach Class Members. *Id.* at ¶21.  Ms. Finegan reports upon final analysis that the notice program exceeded original projections of reaching over 73% of the target audience who are Settlement Class Members, with an average frequency of approximately 2 times to each Class member through print, online display, search, and social media. *Id.* at ¶19.

The deadline for Opt-Outs and Objections was set by the Court's January 19, 2021 Order granting Preliminary Approval as April 7, 2021. The Settlement Notice along with the Settlement Agreement, Application for Attorney Fees and Expenses and other documents from the case were widely publicized through the website and links to the website as well as publication notice. Any Class Member who wished to provide comments or to object had the opportunity and means to do so. There was only one "Objection" during this timeframe, which will be discussed and responded to in a separate brief the Court as ordered filed by June 14, 2021. Additionally, there have been zero timely Opt-Outs, and zero untimely Opt-Outs. This positive reaction from the Class is truly extraordinary and demonstrates the strength of the Settlement.

Counsel for both Plaintiff and Defendant and their respective clients fully concur that the proposed Settlement is fair, reasonable, and adequate. Of the hundreds of thousands of potential objectors, there was only one potential objection to the Settlement.

Furthermore, Class Counsel, who have substantial experience in prosecuting and negotiating class action litigation, have recommended approval of the proposed Settlement as in the best interest of the Settlement Class and this recommendation should be relied upon by the Court. *See Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) (explaining in the context of evaluating a class action settlement, the Court "must rely upon the judgment of experienced counsel, and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'")

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088,1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and  place of the Final Approval Hearing. The Notice also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to

$3,900,000. Therefore, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (quoting *Mullane v. Ent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

Importantly, also the Notice Program reached 73% of the class members on average two times each.  Finegan Decl. ¶19.

## 2.  *The Settlement Should Be Approved as Fair, Adequate and Reasonable*

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Jairam v. Colourpop Cosmetics, LLC*, 2020 LEXIS 181656 at *12 (S.D. Fla. Oct. 1, 2020). A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Jairam v. Colourpop Cosmetics, LLC*, 2020 LEXIS 181656 at *12 (S.D. Fla. Oct. 1, 2020) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Jairam*, 2020 LEXIS 181656 at *12 (quoting *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors supports the clear conclusion that the Settlement is fair, adequate, and reasonable.

### a.  There was not Fraud or Collusion Behind the Settlement

There is not, nor could there be, any evidence of fraud or collusion regarding the Settlement. The proposed Settlement resulted from intensive, arms' length negotiations between very experienced attorneys over the course of an extensive mediation (with JAMS mediator, Hon. Wayne Andersen (Ret.)) and post mediation settlement conferences that stretched over multiple weeks and included numerous telephonic conferences. Layfield Decl. at ¶¶6, 9, and 11. The parties have been involved in negotiations and informal discovery since shortly after an initial notice of the claim was given to Defendant. Initial discussions led to an extensive mediation spearheaded by the Hon. Wayne Andersen (Ret.). After the mediation session, the parties negotiated with one another to flesh out the Settlement framework, such as details of the notice program. The parties continued to negotiate and exchange confidential business and technical information regarding settlement details by examining potential detailed approaches to injunctive relief. There was no reverse auction, as the Settlement was overseen by the

Honorable Wayne Andersen, an experienced and well-respected mediator. *See e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"). Importantly, attorneys' fees were not negotiated until after the substantive relief for the Class had been agreed upon.

### b. The Settlement Will Avoid Years of Complex and Expensive Litigation

The Parties entered into the settlement negotiations only after extensive investigation of the facts and law, which included a substantial pre-suit investigation by Plaintiff, which included laboratory testing, market research and historical label research regarding the products at issue. Layfield Decl.at ¶¶6, 7, 9, and 10. These efforts provided Plaintiff and her experienced counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case and, subsequently, to negotiate and consummate the Settlement proposed to the Court.

Both sides have been vigorously represented by their respective counsel and have invested substantial time and incurred substantial expenses pursuant to this representation. There is no doubt that the time and expense of continuing the litigation would significantly increase costs. The costs of conducting additional and further discovery would be substantial. Experts would need to be involved, produce reports, and be deposed, likely resulting in additional motion practice. This complexity militates in favor of a relatively early resolution, which has been achieved here.

Even if this case were tried to finality, there is a substantial risk that Class Members may not receive as much as they would under the proposed Settlement.  Class members might not receive anything at all.  Avoiding the unnecessary and unwarranted expenditure

of resources and time would benefit the parties and the Court. To continue to litigate this case in hopes of obtaining greater relief would be expensive and wasteful of party and judicial resources.

Moreover, delay in providing Class members with a remedy is an important factor. If this Action were tried to finality, it would likely be years before a final resolution, meaning it would also be years before the Class would receive a benefit, if any. The complexity and expected duration of this Action, compared against the "certainty" and "immediacy" of the significant relief provided for the Class, weigh heavily in favor of approval.[2] This Court has previously held that this factor weighed in favor of approving a settlement where the case involved complex claims and defenses, and the settlement agreement provided an immediate and substantial monetary benefit to the Settlement Class. *Jairam*, 2020 LEXIS 18165 at *14.  In its analysis, the Court emphasized the demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement, and comparing the time required to litigate class actions involving complex claims and defense, versus the immediate benefit from the proposed settlement, led this Court to find the settlement in that case was adequate.

As the Court found in *Jairam*, this Court should find the Settlement in this Action is fair, adequate, and reasonable because it provides immediate and significant monetary and programmatic benefits to the Settlement Class.

---

[2] *See In Re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1041-1042 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)).

### c. The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

In evaluating this factor, the Court considers the degree of case development that class counsel has accomplished prior to settlement, to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *Jairam*, 2020 LEXIS 181656 at *14-15 (citing *U.S. v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998)). However, the law is clear that early settlements are to be encouraged and only some reasonable amount of discovery should be required to make these determinations. *Id.* (citing *Ressler*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Under this precedent, the Court should find that the Parties were well-positioned to confidently evaluate the strengths and weaknesses of the claims and prospects for success at trial and on appeal because of the extensive investigation and informal discovery conducted prior to reaching a settlement, and also because just last year they successfully represented a different class of consumers against other ground coffee manufacturers on very similar facts.  That case, *Becker et. al v. Massimo Zanetti Beverage, US, Inc. et al.,* Case No. 20PH-CV00569 was resolved on a class basis and received final approval in November, 2020.

The parties entered into settlement negotiations only after extensive investigation of the facts and law. Layfield Decl. at ¶¶ 6-9 and 12. Class Counsel conducted an extensive and comprehensive pre-suit investigation, including a comprehensive analysis of the products and claims at issue; thoroughly researched the law and facts pertinent to Plaintiff's claims and any potential defenses; and assessed the risks of prevailing on each of the respective claims on pre-trial motions and at trial. In addition, the Parties engaged in an exchange of confidential information, including sensitive business information, which

helped shape the Settlement terms. Representatives of the parties also held numerous teleconferences, wherein they engaged in a further exchange of information and evaluation of the claims at issue. These efforts provided Plaintiff and her experienced counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case and, subsequently, to negotiate and consummate the Settlement proposed to the Court.

As part of the Settlement, Class Members have the ability to claim $0.80 per Unit purchased. Tier 1 claimants will receive a maximum of $4.80 per Household to Settlement Class Members without the need to provide any proof of purchase.  Tier 2 claimants will receive a maximum of $25.00 (at $0.80 per unit) per Household to Settlement Class Members who provide a valid Proof of Purchase. All Settlement Class Members will receive financial and other benefits from the programmatic relief provided by the Settlement. The Maxwell House and Yuban product labels will, as a result of this settlement, provide Settlement Class Members with the ability to make accurate apples to apples value comparisons between the Maxwell House and Yuban brands on the one hand and competitor brands on the other hand. If as Plaintiff alleges the Products were overstating the number of cups of coffee that could be brewed following the label directions, the correction of these misstatements allows Settlement Class Members to save money on their future ground coffee purchases by being able to make accurate "cost per cup" comparisons across brands and even within varieties of the Maxwell House and Yuban brands.  Fairness and truth in advertising have an inherent benefit in the United States consumer market place. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

969-70 (9th Cir. 2018).  These benefits will be provided without the time and expense of litigating this case to trial—which is a tremendous recovery for the Class.

> **d. The Probability of the Plaintiff's Success on the Merits and the Range of Possible Recovery in Relation to the Benefits Provided by the Settlement Support Approval.**

Without a settlement, Plaintiff and Class Members face a risk of losing on the merits of their claims at trial and receiving no relief at all. Plaintiff's likelihood of success at trial balanced against the amount offered in the settlement is the most important factor relevant to the fairness of a class action settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007). In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*,118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id. see also Jairam*, 2020 LEXIS 181656 at *17 (recognizing in determining whether a settlement is fair in comparison to the potential range of recovery, the Court is guided by the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean it is unfair or inadequate, and must be evaluated in light of the attendant risks of litigation, meaning the mere possibility that a class might receive more if the case were fully litigated is not a good reason for disapproving the settlement).

Since the inception of this litigation, Defendant has denied and continues to deny Plaintiff's allegations and all charges of wrongdoing or liability of any kind. Defendant

maintains that no misrepresentations were made and that Defendant acted lawfully under state and federal law. Defendant hired a third-party laboratory to test the Products and provided Plaintiff with test results that refuted the testing results from Plaintiff's expert. Therefore, if litigation had continued there would have been a "battle of experts" with an uncertain outcome. Damages would have also been highly contested in litigation based on Defendant's laboratory results.  Additionally, class certification issues would have been highly contested, particularly on the issues of materiality and Plaintiff's class-wide damages model.  In sum, continuing this Action without a settlement would have involved several major litigation risks, including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment.

The Settlement secures for the Class significant monetary relief and ensures that Defendant will remove or correct the Challenged Language from its Products.  In short, each Class Member obtains not only the benefit of the programmatic relief, but also the opportunity to recoup some or all of their alleged damages; and the Settlement avoids the risk that Class Members would not obtain anything should the case be decided on summary judgment or at trial in favor of Defendant.  *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. . . .  It is possible that trial on the merits would result in . . . no relief for the class members. . . .  Based on . . . the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement . . . is a fair and reasonable compromise."); *Swift v. BancorpSouth Bank*, 2016 LEXIS 196328 at *30 (N.D. Fla. 2016) (holding same).

In this case, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Layfield Decl. at ¶¶ 12-16. The proposed Settlement is within the range of possible approval because it provides—today, not years from now—real, substantial, and practical benefits to the Class. This factor, the most important of all the factors, weighs in favor of approval of the Settlement.

An example of the risk of continued litigation is evidenced by the recent dismissal without prejudice of a similar case. In *Marcia Sorin v. The Folger Coffee Company*, Case No. 20-80897-CV (S.D. Fla.) the Plaintiff filed a class complaint, and subsequently a First Amended Class Action Complaint, alleging the defendant had violated FDUPTA through fraudulent misrepresentations on its coffee cannisters as to the number of cups of coffee that could be brewed when following the instructions on the labeling. [D.E. 24] (first amended complaint). The Plaintiff sought monetary damages and injunctive relief on a class-wide basis. *Id.* On March 5, 2021, the Court entered an Order dismissing the lawsuit, on the grounds that Plaintiff was not entitled to injunctive relief because she could not show a sufficient likelihood that she would be affected by the allegedly unlawful conduct in the future, and also on the ground that the alleged misrepresentations were implausible. [D.E. 36]. Specifically, the Court found the product's instructions as to the way cups of coffee could be brewed were not deceptive. *Id.* Although the dismissal was without prejudice, the ruling in the *Sorin* case highlights the risk of continued litigation in this Action, as well as the value of the Settlement to Class Members considering the difficulties associated with litigation.

### e.  The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval

Class Counsel strongly endorse the Settlement.  Layfield Decl. at ¶20.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051,1060 (M.D. Fla. 1988); *see also Domestic Air Transp. Antitrust Litig*, 148 F.R.D. 297, 312-13 (N.D. GA 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"); *Jairam*, 2020 LEXIS 181656 at *9 (stating same).

There has been no meaningful opposition to the Settlement, and zero exclusion requests have been filed to date. Layfield Decl. at ¶22.  There has only been one potential "objection," which is meritless and should be stricken and/or overruled for the reasons that will be presented in the June 14, 2021 objection briefing ordered by this Court. The lack of any meaningful opposition is a compelling indication that the Settlement Class is satisfied with the Settlement. This Court, like others, considers the reaction of the Settlement Class to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable. *Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 LEXIS at *20 (S.D. Fla. Nov. 9, 2015). The lack of opposition to the Settlement supports the conclusion that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, No. 2014 LEXIS

177155, at *5 (S.D. Fla. Dec. 17, 2014); *Hamilton v. SunTrust Mortg. Inc.,* 2014 LEXIS 154762, at *11-12 (S.D. Fla. Oct. 24, 2014).

### 3. The Court Should Certify the Settlement Class

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In this case, the Court should certify the Settlement Class because each of these factors has been met.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of hundreds of thousands of individuals/households, located anywhere within the United States, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical

area"). In order to satisfy this requirement, the Plaintiff is not required to allege the exact number and identify of the class members, but must only establish that joinder is impracticable through some evidence or a reasonable estimate of the number of purported class members. *Anderson v. Bank of the S.*, 118 F.R.D. 13, 145 (M.D. Fla. 1987) (quoting *Zeidman v. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The general rule of thumb in the Eleventh Circuit is that less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to the other factors. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D.  674, 684 (S.D. Fla. 2013). Plaintiff has presented a reasonable estimate that the number of purported Class Members **far exceeds** forty members, located throughout the United States, with over forty-one thousand (41,000) claims submitted to the Settlement Administrator, clearly establishing that joinder is impracticable and that numerosity has been satisfied. Finegan Decl. at ¶26.[3]

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). The threshold for commonality is not high and a single common question of law or fact is sufficient to satisfy the commonality requirement as long as it affects all class members alike. *Boca Raton Cmt. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla. 2006). The requirement of typicality is satisfied where the interest

---

[3] An affidavit from the named plaintiff and Class Represntative in support of this Unopposed Motion for Final Approval of Class Action settlement is attached hereto as **Exhibit "D."**

of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Commonality and typicality are satisfied with respect to the Settlement because there are issues of fact and law that are common to the Class, and the Class Representative's and the Class Members' claims arise from the same event or course of conduct by Defendant. In addition, the conduct and facts related to Defendant's manufacturing and labeling of the Products give rise to the same legal theories, and the underlying facts are substantially similar. *See Kornberg* 741 F.2d at 1337.

The Class Representative and Class Counsel have adequately represented the Class, having achieved a common nucleus of Settlement benefits that will provide important and immediate monetary and injunctive relief for all Class Members. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Defranks v. Nastygal.com USA, Inc.*, 2020 LEXIS 99602 (S.D. Fla. 2020); *Fabricant* v. Sears Roebuck & Co.*, 202 F.R.D. 210, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging

interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies Rule 23(b)(3)'s predominance factor because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Moreover, in the absence of a class action, the potential expense of the litigation in relation to the relatively small recovery amount for each Class Member would prevent most, if not all, injured parties from initiating a lawsuit. Hence, judicial economy and efficiency would dictate again that all such possible claims be tried in one class action lawsuit, rather than allowing numerous injured parties to abstain from vindicating their rights in court.

For these reasons, the Court should certify the Settlement Class.

## CONCLUSION

The named plaintiff and Class Representative and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Rule 23(a), 23(b)(3), and 23(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint Law Office of DeWayne Layfield, PLLC, Southern Atlantic Law Group, PLLC, and Law Office of Howard W. Rubinstein P.A., as Class Counsel; (5) award the requested attorneys' fees and costs outlined in Plaintiff's Application for Attorneys' Fees, Expenses, and Costs, incorporated herein for all purposes [D.E. 45]; and (6) enter Final Judgment dismissing the Action with prejudice.  Counsel for Defendant has no opposition to this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2021, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that it is being served on all counsel of record via the Court's ECF notification system.

By: s/Nicholas T. Zbrzeznj
Lydia S. Zbrzeznj
Florida Bar No. 98181
Nicholas T. Zbrzeznj
Florida Bar No. 98180
99 6th Street SW
Winter Haven, FL 33880
Telephone: (863)656-6672
Facsimile: (863)301-4500
Emails: lydia@southernatlanticlaw.com
nick@southernatlanticlaw.com
kara@southernatlanticlaw.com
ATTORNEYS FOR PLAINTIFF

L. DeWayne Layfield, Esq.
Law Office of L DeWayne Layfield, PLLC
P.O. Box 3829
Beaumont, Texas 77704
Telephone: 407-832-1891
Fax: 866-280-3004
Email: dewayne@layfieldlaw.com
ATTORNEY FOR PLAINTIFF

Joel Oster
Of Counsel
The Law Office of Howard W. Rubinstein P.A.
1281 N. Ocean Dr. Apt. 198
Singer Island, FL 33404
Telephone: 832-715-2788
Fax: 561-688-0630
Emails: howardr@pdq.net
ATTORNEY FOR PLAINTIFF

Todd D. Carpenter
Carlson Lynch LLP
1350 Columbia St., Ste. 603
San Diego, California 92101
tcarpenter@carlsonlynch.com
Tel: (619) 762-1900
ATTORNEY FOR PLAINTIFF

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
tlfisher@bursor.com
Tel: (925) 300-4455
ATTORNEY FOR PLAINTIFF

Benjamin Heikali
Faruqi & Faruqi, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
bheikali@faruqilaw.com
Tel: (424) 256-2884
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with Defendant's counsel, Mr. Dean Panos, on June <u>6</u>, 2021, and confirmed that Defendant does not oppose the relief sought in this Application.

<u>s/L. DeWayne Layfield</u>
L. DeWayne Layfield