**KIMBERLY E. FERRON**, *individually and*
*on behalf of all others similarly situated*,

      Plaintiff,

v.

**KRAFT HEINZ FOODS COMPANY**,

      Defendant.

_____/

**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND GRANTING**
**APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

      **THIS CAUSE** comes before the Court on Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Incorporated Memorandum of Law [ECF No. 49] ("Final Approval Motion"), as well as Plaintiff's Application for Attorneys' Fees, Expenses, and Costs [ECF No. 45] ("Motion for Attorneys' Fees") (collectively the "Final Approval Motions").

      After careful consideration of the record and Final Approval Motions, the Court finds the instant settlement—which resolves claims regarding the purported mislabeling of ground coffee—is good to the last drop.[1]  Accordingly, for the reasons that follow, the Final Approval Motions [ECF Nos. 45, 49] are **GRANTED**.

## BACKGROUND

      As an initial matter, the Court is familiar with the factual and procedural history of this suit, having presided over the Action for approximately eight months.[2]  During this time, the Court

---

[1]  Maxwell House 'Last Drop' Coffee Commercial (1976), https://www.youtube.com/watch?v=tUnNDEyg BjA (last visited July 13, 2021).

[2]  This Order incorporates the definitions of terms used in the Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") attached to the Final Approval Motion.  *See* [ECF No. 49-1].

has had the opportunity to observe the diligent and detailed work of Class Counsel and Defendant's counsel. Plaintiff's Final Approval Motions established the amount of time, effort, and expense that went into procuring a valuable Settlement for the Class, particularly when facing a contentious dispute on the merits against experienced defense counsel. The attorneys are skilled advocates, who engaged in an extensive and detailed pre-suit investigation and informal discovery process, and who proficiently identified the strengths and weaknesses of the issues in this Action prior to reaching a settlement through a mediation process overseen by an experienced and well-respected mediator. The Court finds that the Settlement is the result of arm's-length negotiations.

A fundamental question at this stage of the proceedings is whether the Court has sufficient facts before it to evaluate a proposed Settlement so that it can intelligently and knowledgeably approve or disapprove the Settlement. *See Jairam v. Colourpop Cosmetics, LLC*, No. 19-62438, 2020 WL 5848620, at *1 (S.D. Fla. Oct. 1, 2020) (citing *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984)); *Dasher v. RBC Bank U.S. (In re Checking Account Overdraft Litig.)*, No. 09-MD-02036, 2020 WL 4586398, at *1-2 (S.D. Fla. Aug. 10, 2020); *Gevaerts v. TD Bank, N.A.*, No. 14-20744, 2015 WL 6751061, at *1 (S.D. Fla. Nov. 5, 2015) (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d at 1084 n.6; *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)). The present record, including the evidence presented and opinions of Class Counsel, Plaintiff's Final Approval Motions, and the declarations filed in support of the same, are more than adequate for the Court to intelligently and knowledgeably evaluate the Settlement and determine that it is fair, reasonable, and adequate.

## I.    The Parties and the Putative Class Action Complaint

This case arises out of Plaintiff Kimberly E. Ferron's allegations that Defendant Kraft Heinz Foods Company deceptively and unlawfully packaged, marketed, and labeled numerous ground coffee products sold under the Maxwell House and Yuban brands. Specifically, Plaintiff

alleged that Defendant deceptively and unlawfully labeled, packaged, and marketed ground coffee sold as containing enough coffee such that each product made a range of cups of coffee depending on the brewing instructions that are followed—even though, contrary to these representations, the products allegedly did not contain enough ground coffee to make the stated number of cups when following the brewing instructions on the Product[3] label.

Plaintiff filed her initial Class Action Complaint on July 24, 2020, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, and included claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*. Plaintiff, on behalf of the Class, sought both monetary and injunctive relief. Defendant then timely removed the action to federal court. Subsequently, Plaintiff filed an Amended Class Action Complaint [ECF No. 25] on December 1, 2020, which also included claims for violations of FDUTPA, and similar statutes in other states.

## II.   Pre-Suit Investigation, the Proceeding, and Settlement Negotiations

Prior to filing suit and during the pendency of the case, Class Counsel conducted a detailed investigation and analysis of the Products. These efforts included retention of an independent laboratory to conduct extensive testing of the Products. Class Counsel also worked with the Defendant and its laboratories to evaluate all testing results. The Parties engaged in thorough and extensive investigation into the facts by way of their participation in informal discovery.

More specifically, the parties' efforts included: (1) engaging in a substantial pre-suit investigation for months regarding the actual amount of coffee in the Products compared to the represented amounts, involving work by multiple independent laboratories and consultants; (2) researching the applicable law with respect to the claims asserted and potential defenses thereto;

---

[3]  A list of the products covered by the Settlement Agreement is attached as Exhibit "C" to the Agreement and will collectively be referred to herein as the "Products." *See* [ECF No. 49-1].

(3) coordinating the work of multiple law firms representing purchasers of the Products in multiple suits filed in various jurisdictions throughout the nation; (4) exchanging confidential business and technical information regarding the Products; and (5) engaging in extensive discussions and negotiations, including a full day mediation session with the Honorable Wayne Andersen (Ret.), a former District Judge in the U.S. District Court for the Northern District of Illinois, and post-mediation settlement conferences that stretched over multiple weeks and included dozens of telephonic conferences (some involving Judge Andersen).

The Parties engaged in intensive mediation and arm's length negotiations to resolve the action and all of Plaintiff's claims, and ultimately reached an agreement. In December 2020, Class Counsel and Defendant executed a Settlement Agreement that memorialized the material terms of the Settlement.

## III.  <u>Approval Proceedings</u>

The Court granted preliminary approval of the Settlement on January 19, 2021. *See* Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class ("Preliminary Approval Order") [ECF No. 41].

Following preliminary approval, the Settlement Administrator ("Administrator") provided Notice as ordered by this Court and set forth in the Settlement Agreement. After receiving notice, none of the Settlement Class Members opted out of the Settlement, and only one Class Member submitted an objection. As discussed below, the Court finds that Class Notice was properly effectuated. The notice plan was more than adequate to alert Settlement Class Members as to the terms of the Settlement Agreement, the procedures for objecting to and opting out of the Settlement, and the rights that Settlement Class Members would give up by remaining part of the Settlement.

In accordance with this Court's January 19th Preliminary Approval Order, Plaintiff and Class Counsel sought final approval of the Settlement Agreement by timely filing the following: (1) Motion for Attorneys' Fees, which included a Declaration from Class Counsel, L. DeWayne Layfield (filed March 22, 2021) [ECF No. 45]; (2) Final Approval Motion, which included Declarations from Class Counsel, L. DeWayne Layfield; Jeanne C. Finnegan, APR, the Managing Director and Head of Kroll Notice Media Solutions, an affiliate company of Kroll Settlement Administration, f/k/a Heffler Claims Group, LLC; and Class Representative Kimberly E. Ferron (filed June 7, 2021) [ECF No. 49]; (3) Plaintiff's Opposition to and Motion to Strike and Overrule the Sole Objection to the Settlement Filed by Objector, Dr. David Tribula (filed June 14, 2021) [ECF No. 50]; and (4) Plaintiff's Written Responses to the Issues Identified in the Court's Order Setting Agenda for Final Approval Hearing (filed June 17, 2021) [ECF No. 51] (collectively referred to as "Final Approval Filings").

On June 21, 2021 at 10:00 A.M., the Court held a duly noticed Final Approval Hearing ("Hearing") pursuant to the Court's Preliminary Approval Order. *See* [ECF No. 52]. Prior to and during the Hearing, the Court reviewed the Plaintiff's Final Approval Filings in detail and heard from counsel for the Parties. Present before the Court for the Hearing were Ms. Ferron, Class Counsel, and counsel for Defendant. The single objector, Dr. David Tribula ("Dr. Tribula") was not present.

The Court heard argument from counsel for both parties with respect to the Final Approval Filings and Dr. Tribula's Objection [ECF No. 46]. Despite Dr. Tribula not being present, the Court provided a detailed analysis of the Objection. At the conclusion of the Hearing, the Court reiterated its findings and conclusions, including that: (1) the Settlement is fair, adequate, and reasonable and will be granted final approval; (2) Dr. Tribula's Objection is to be stricken for non-compliance with the Court's Preliminary Approval Order, or alternatively overruled on the merits; and (3)

Class Counsel's application for an award of attorneys' fees of $3,900,000.00 which is equal to 24.4 % of the total monetary benefit provided by the Settlement, and 3.1% of the total value of the Settlement (meaning the value provided by the Settlement's monetary benefit plus the value provided by the injunctive relief which has a mathematically calculable value), shall be granted.

## IV. <u>Summary of the Settlement Terms</u>

### A. The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as: "All Persons who purchased any Products in the United States during the Class Period." *See* Agreement [ECF No. 49-1] at 11, Section II, 2.49. Excluded from the Settlement Class are: (a) Persons who purchased or acquired any Products for resale; (b) the Released Parties; (c) all Persons who file a timely and valid Opt-Out; (d) Plaintiff's Counsel and Defendant's Counsel; (e) federal, state, and local governments (including all agencies and subdivisions, but excluding employees not otherwise excluded under the Agreement); and (f) the judicial officers and courtroom staff overseeing the Action. *Id.*

### B. The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice Program, as outlined in detail in the declaration of Jeanne C. Finegan of Kroll Notice Media Solutions, an affiliate company of Kroll Settlement Administration, f/k/a Heffler Claims Group (hereinafter "Kroll Media") provided notice to the Settlement Class using four different methods: (1) print; (2) digital; (3) a Settlement Website; and (4) a toll-free number. *See* [ECF No. 49-2]. The Notice Program was designed to provide the Settlement Class with important information about this Action and the Settlement, including key pleadings from this matter, a list of Frequently Asked Questions and Answers, the Long-Form Notice, contact information for the

Administrator, the claim form (which can also be submitted online), and key deadlines. *Id.* In addition, by calling the toll-free number, Settlement Class members could learn more about the settlement using both Live Operators and an interactive voice response ("IVR") system. *See* Agreement [ECF No. 49-1] at 23-25.

### C. Monetary Relief for the Benefit of the Class

The Settlement requires Defendant to make available up to Sixteen Million Dollars ($16,000,000.00) for the benefit of the Settlement Class. *Id.* at 11, Section II, 2.51. To receive a portion of the Settlement Fund, Settlement Class members must properly complete an online or paper Claim Form, which must be received within 85 days following the Notice Date. *Id.*, Ex. D at 13, ¶ 2. "Notice Date" means the date on which the Settlement Administrator begins disseminating the Settlement Notice consistent with the Preliminary Approval Order. *Id.* at 8, Section II, 2.28. According to the Preliminary Approval Order, February 17, 2021 was set as the Notice Date and the deadline for receipt of a Claim Form was May 18, 2021. *See* [ECF No. 41] at 12.

Defendant will issue Benefit Payments on all Valid Claims. *See* Agreement [ECF No. 49-1] at 21, Section VI, 6.5(g). In other words, each Settlement Class member, who timely filed a valid Claim Form with the Administrator, shall receive payment from Defendant in the following amount:

> a) Tier 1. Settlement Class Members who elect to fill out the Claim Form section for Tier 1 and who do not have valid Proof of Purchase may recover $.80 per Unit purchased, up to a maximum of 6 Units per Household; or
>
> b) Tier 2. Settlement Class Members who elect to fill out the Claim Form section for Tier 2 and who provide valid Proof(s) of Purchase may recover $.80 per Unit purchased for the number of Units for which a valid Proof of Purchase has been provided, up to a maximum reimbursement of twenty-five dollars ($25.00) per Household.

*Id.* at 17, Section V, 5.2.

**D. Injunctive Relief for the Benefit of the Class**

The Settlement also provides injunctive relief for the benefit of the Settlement Class. Specifically, Defendant agreed to either: (1) remove the Challenged Language from the Labeling of the Products (referred to herein as "Option 1"); or (2) revise the lower and upper limits of the serving ranges to correspond to the cups of coffee that can be brewed following the single cup directions (lower limit) and the cups of coffee that can be brewed using the 10 cup directions (upper limit), as confirmed by a third-party laboratory (referred to herein as "Option 2"). *Id.* at 15-16, Section V, 5.1. The Settlement Agreement provides specific governing criteria for the programmatic relief depending on if "Option 1" or "Option 2" is selected.

**E. Attorneys' Fees and Costs**

The Agreement allows Class Counsel to request attorneys' fees, litigation costs, and expenses of up to $3,900,000.00, which is 24.4 % of the total monetary benefit provided by the Settlement, and 3.1% of the total value of the Settlement (meaning the value provided by the Settlement's monetary benefit plus the value provided by the Settlement's injunctive relief which has a mathematically calculable value). *Id.* at 22, Section VII, 7.1. The Parties negotiated and reached an agreement regarding attorneys' fees and costs only after agreeing on all other material terms of the Settlement, and as part of an arm's length mediation process overseen by Judge Andersen.

**F. Class Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members and possible members of the class will be deemed to have released Defendant from claims relating to the subject matter of this Action. The detailed release language is found in Section XII of the Agreement. *See* Agreement [ECF No. 49-1] at 31-33.

## ANALYSIS

Federal Rule of Civil Procedure 23(e) provides that, before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Colourpop Cosmetics*, 2020 WL 5848620 at *3 ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements").

The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Colourpop Cosmetics*, 2020 WL 5848620 at *3 (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases). As one court noted:

> In evaluating a proposed class action settlement, the Court will not substitute its business judgment for that of the parties; the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.

*Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (citations and internal quotation marks omitted). In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *Colourpop*

*Cosmetics*, 2020 WL 5848620 at *3 (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012)). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* (citations and internal quotation marks omitted).

As explained below, the Settlement Agreement here is more than sufficient under Rule 23(e). The issues in this Action were disputed and the Agreement was negotiated at arm's length by experienced counsel, overseen by a well-respected mediator, who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. There was no fraud or collusion. The Settlement Agreement was reached after the Parties had engaged in mediation and extensive settlement discussions, and after a detailed investigation by both sides, which included engagement of independent laboratories to test the Products, extensive pre-suit discovery, and exchange of information—including information about the size and scope of the Settlement Class. Counsel for the Parties were therefore well-positioned to evaluate the benefits of the Agreement, considering the expense, risk, and uncertainty of protracted litigation.

## I.     The Court's Exercise of Jurisdiction is Proper

The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§1332(d)(2) and (6).

In addition to having personal jurisdiction over Plaintiff, who is a party to the Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *Colourpop Cosmetics*, 2020 WL 5848620 at *4; *Dasher*, 2020 WL 4586398 at *7; *Gevaerts*, 2015 WL 6751061 at *4.

**A. The Best Notice Practicable Was Provided to the Settlement Class**

Pursuant to the Court's Preliminary Approval Order, beginning on or about February 17, 2021, the Settlement Administrator disseminated the Settlement Notice by setting up a state-of-the-art notice campaign, which included launching the Settlement Website, publication notice, online and mobile advertising, and launching a toll-free telephone number through which Class Members can access Settlement information. A complete summary of the notice process and its success is set out in the declaration of Jeanne C. Finegan. *See* [ECF No. 49-3]. In her declaration, Ms. Finegan describes the Settlement Administrator's creation and hosting of a dedicated website entitled www.groundcoffeesettlement.com, as well as the publication of both Long Form Notices and Claim Forms to Class Members, which informed Class Members of their rights, including the process to seek exclusion from the Settlement, object to the Settlement, and instructions on how to submit a Claim Form as well as the deadlines associated with those actions.

As of May 20, 2021, there were 637,753 page views of the settlement website, averaging three page views per user. *See* [ECF No. 49-3] ¶¶ 14-17. The Settlement Administrator also maintained a toll-free number (1-833-644-1596), which Class Members could call to obtain additional information regarding the Settlement using both Live Operators and an IVR system. *Id.* ¶ 15. As of May 20, 2021, 884 Class Members called the IVR, and 513 Class Members spoke to Live Operators. *Id.*

The Print Publication Notice was published as a half-page, black and white ad in *People Magazine* on March 5, 2021, and *Good Housekeeping* on March 23, 2021, and as a full-page, black and white ad in Readers Digest on March 16, 2021. *Id.* ¶ 20. Additionally, approximately 49 million online display, search, and social media ads were served, which were specifically targeted to reach Class Members. *Id.* ¶ 21. Ms. Finegan reported upon final analysis that the notice program exceeded original projections of reaching over 73% of the target audience who are Settlement

Class Members, with an average frequency of reaching each Class member approximately two times through print, online display, search, and social media. *Id.* ¶ 19.

Ms. Finegan has been widely recognized as being at the forefront of modern notice practices and was one of the first notice experts to integrate digital media, social media, and influences into court-approved legal notice programs. *See* [ECF No. 49-2] ¶ 10. The Court specifically finds that the notice campaign, overseen by Ms. Finegan on behalf of the Settlement Administrator, provided the best notice practicable to the Settlement Class and applauds Ms. Finegan for implementing a notice program that reached over 73% of a nationwide class for a total of two times per member on average. Notice of the Settlement was provided to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's application for an award of attorneys' fees and expenses, and the right to opt-out of or object to the Settlement. [ECF No. 49]; [ECF No. 49-2] ¶ 17; [ECF No. 49-3] ¶ 21. Accordingly, the Court finds that the Settlement Class members were provided with the best practicable notice under the circumstances.

### B. The Class Notice was Reasonably Calculated to Inform Settlement Class Members of Their Rights

The Court-approved Notice Program satisfied due process requirements because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *Colourpop Cosmetics*, 2020 WL 5848620 at *4; *Dasher*, 2020 WL 4586398 at *8; *Gevaerts*, 2015 WL 6751061 at *5; *see generally In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). In this case, the Notice, among other things:

- Defined the Settlement Class;

- Described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds;

- Informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing;

- Notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents; and

- Stated Class Counsel's intention to seek attorneys' fees and expenses of up to $3,900,000.

*See* [ECF No. 49-2] Ex. "B".

The Settlement Website portion of the Notice provided continuing notice of and access to important documents filed in the case, including the Settlement Agreement, Court Orders, Class Counsel's Fee Application, and other documents regarding the Final Approval Hearing. Therefore, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). The Court notes that the fact the Notice both reached Class Members and provided the above-referenced information to the Class is highlighted by the Court's receipt of Dr. Tribula's Objection.

Importantly, the Notice Program reached 73% of the class members on average two times each. *See* [ECF No. 49-2] ¶ 19. This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so. Despite that opportunity, there were no opt-outs and only one objection, which speaks favorably to its terms.

II.    **The Settlement is Fair, Adequate, and Reasonable, and Therefore Final Approval is Appropriate Under Rule 23**

A class action may be settled only with court approval, which requires the court to find the settlement fair, reasonable, and adequate. *In re Equifax Customer Data Sec. Breach Litig.*, 999

F.3d 1247, 1284-85 (11th Cir. 2021) (citing Fed. R. Civ. P. 23(e)(2)); *see also Colourpop Cosmetics*, 2020 WL 5848620 at *5 ("In considering final approval of the Settlement, the Court considers whether it is fair, adequate, and reasonable and not the product of collusion.") (citing *Leverso v. SouthTrust Bank of Al., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994)).

A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Colourpop Cosmetics*, 2020 WL 5848620 at *5 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Id.* (quoting *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000)) (internal quotation marks omitted).

Under Rule 23(e)(2), settlements may be approved if the Class was adequately represented and the settlement was negotiated at arm's length, and if the relief provided is adequate under the factors outlined in Rule 23(e)(2)(C).[4] *Cook, et al. v. Gov't Emps. Ins. Co.*, No. 17-00891, [ECF No. 215] at 11-12 (M.D. Fla. June 22, 2020). The Eleventh Circuit has also instructed district courts to consider several additional factors—often referred to as the *Bennett* factors. *See In re Equifax*, 999 F.3d at 1285-86 (citing *Bennett*, 737 F.2d at 986). The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the

---

[4] The Rule 23(e)(2) factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Leverso*, 18 F.3d at 1530 n.6 (outlining the *Bennett* factors). As one court recently explained:

> Rule 23(e)(2) was amended in 2018 to add the textual factors addressing the adequacy of the terms of a Settlement Agreement. The Advisory Committee was clear that while it intended to 'focus the court and the lawyers on the core concerns' or 'central concerns' of Rule 23, it did not intend to 'displace' the various circuits' governing law on approval of class action settlements. . . . Thus, the Eleventh Circuit's prescription of the factors that courts should consider when evaluating the fairness and adequacy of settlement terms in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) remain relevant, particularly to the extent not encompassed by the Rule 23(e)(2)(C) factors.

*Cook*, No. 17-00891, [ECF No. 215] at 11-12.

As explained below, the Court finds the Settlement to be fair, reasonable, and adequate upon analyzing the Rule 23(e)(2) factors, the analysis of which are subsumed within a review of the *Bennett* factors.

## A. There Was No Fraud or Collusion, and the Settlement was Negotiated at Arm's Length

The Court finds no evidence of fraud or collusion regarding the Settlement. Instead, the Settlement resulted from good faith arm's-length negotiations between experienced attorneys over the course of an extensive mediation overseen by Judge Andersen and post-mediation settlement conferences that spanned over multiple weeks and included numerous telephonic conferences. *See* [ECF No. 49-3] ¶¶ 6, 9, 11. Although at first glance the Settlement may appear to have been reached at an early stage in the litigation, Plaintiff's Final Approval Filings, and declarations in support thereof, established the amount of pre-suit investigation and informal discovery that took place in this matter and further established the contentiousness and disputed nature of the issues.

The Parties were involved in negotiations and informal discovery since shortly after an initial notice of the claim was sent to the Defendant. Initial discussions resulted in an extensive mediation led by Judge Andersen. After the mediation session, the Parties negotiated with one

another to flesh out the Settlement framework, such as details of the notice program. The Parties continued to negotiate and exchange confidential business and technical information to flesh out settlement details, including, but not limited to, the potential forms of injunctive relief.

The fact that the Parties aggressively disputed the issues in the case, engaged in an all-day mediation session overseen by an experienced and well-respected mediator, and only reached an agreement after continued mediation discussions, also overseen by the mediator, forms the basis for the Court's finding that the Settlement was reached through arm's-length negotiations and was not the result of fraud or collusion. *See, e.g., Hanley v. Tampa Bay Sports & Entm't LLC*, No. 19-00550, 2020 WL 2517766, at * 3 (M.D. Fla. April 23, 2020) (explaining where the parties negotiated at arm's length the Court should find the settlement was not the product of collusion and finding arm's-length negotiations occurred where the parties aggressively litigated the case, participated in a full day mediation session in front of a well-respected mediator, and only after continued mediation discussions following mediation reached an agreement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"). Importantly, in this case, the attorneys' fees were not negotiated until after the substantive relief for the Class had been agreed upon.

### B. Likelihood of Success in Litigation

Since the inception of this litigation, Defendant disputed Plaintiff's allegations and all charges of wrongdoing or liability of any kind. Defendant maintains that no misrepresentations were made, and that Defendant acted lawfully.

Notably, Defendant hired a third-party laboratory to test the Products and provided Plaintiff with test results that refuted the testing results from Plaintiff's expert—and, indeed, suggested that some of the Products were *overfilled*. Therefore, if litigation had continued there would have been

a "battle of experts" with an uncertain outcome. Damages would have also been highly contested and litigated based on Defendant's laboratory results.

Additionally, class certification issues would have been highly contested. Defendant would have argued, among other things, that individual variations in the amount of coffee from canister to canister precluded a finding of predominance, as these variations would make it impossible to determine whether *each* Product was underfilled (as would be necessary to establish liability on a class-wide basis) or by *how much* each Product was underfilled (as would be necessary to establish a damages model that complies with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)). Those arguments presented a significant risk to the Class Members, particularly given that this case involved 35 varieties of Defendant's Product. In sum, continuing this Action without a settlement would have involved several major litigation hurdles, including, but not limited to, class certification, summary judgment briefing, *Daubert* briefing, trial, and appellate review following a final judgment.

The fact that the Settlement secures for the Class significant monetary relief and ensures that Defendant will remove or correct the Challenged Language from its Products weighs heavily in favor of approving the Settlement. Importantly, each Class Member obtains not only the benefit of the programmatic relief, but also the opportunity to recoup some or all of their alleged damages. The Settlement also avoids the risk that Class Members would not obtain anything should the case be decided on summary judgment or at trial in favor of Defendant. *See, e.g., Haynes v. Shoney's*, No. 89-30093, 1993 WL 19915, at *6 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. . . . It is possible that trial on the merits would result in . . . no relief for the class members. . . . Based on . . . the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement . . . is a fair and reasonable compromise."); *Swift v. BancorpSouth Bank*, No. 10-00090, 2016 WL 11529613, at

*11 (N.D. Fla. July 15, 2016) (same).  Not to mention that the Class Members who submitted Tier 1 Claims (those without proof of purchase) received more than they could have recovered at trial.

An example of the risk of continued litigation is evidenced by the recent dismissal without prejudice of a factually similar case.  In *Sorin v. Folger Coffee Co.*, No. 20-80897 (S.D. Fla. 2020) the plaintiff alleged that the defendant had violated FDUPTA through fraudulent misrepresentations on its coffee canisters as to the number of cups of coffee that could be brewed when following the instructions on the labeling.  The plaintiff sought monetary damages and injunctive relief on a class-wide basis.  However, on March 5, 2021, the court dismissed the lawsuit and held that the plaintiff was not entitled to injunctive relief because she could not show a sufficient likelihood that she would be affected by the allegedly unlawful conduct in the future. *Id.* [ECF No. 36].  The court also held that the alleged misrepresentations were implausible and that the product's instructions as to the way cups of coffee could be brewed were not deceptive. *Id.*  The ruling in the *Sorin* case highlights the risk of continued litigation in this Action, as well as the value of the Settlement to Class Members considering the difficulties associated with litigation.

In this case, the Court finds Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. *See* [ECF No. 49-3] ¶¶ 12-16.  The proposed Settlement is well within the range appropriate for approval because it provides present, real, substantial, and practical benefits to the Class.  This factor thus weighs in favor of approval of the Settlement.

### C. The Fairness, Adequacy, and Reasonableness of the Settlement in Light of the Possible Range of Recovery

The second and third *Bennett* factors overlap, as a court first determines the possible range of recovery and then determines where in that range a fair, adequate, and reasonable settlement lies.  *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *4-5 (S.D. Fla. May 24, 2019).  In determining whether the Settlement is fair in comparison to the

potential range of recovery, the Court is guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Indeed, courts regularly find settlements to be fair even where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also Great Neck Capital Appreciation Investment P'ship, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Based on the evidence presented in Plaintiff's Final Approval Filings and the arguments presented at the Final Approval Hearing, the Court finds that when analyzing the range of possible recovery, the benefits provided by the Settlement are fair, adequate, and reasonable. In fact, based on the mathematical analysis related to the potential recovery in this Action, the benefits provided to the Class by the Settlement are remarkable.

Throughout the litigation, Defendant took and maintained the position, based on the Product testing performed by its expert, that only certain Products were even arguably underfilled, that some Products were *overfilled*, and that any potential underfill ranged between 0 and 5% depending on the variety of the Product at issue. Therefore, if this matter had proceeded, and made it to trial, the bottom of the range of recovery could have been a defense verdict or a per unit damage value far less than the value provided for by the Settlement.

Plaintiff provided evidence in the Final Approval Filings that the individual varieties of the Product sold at national retailers such as Target and Walmart cost, on average, $6.16 per unit. *See* [ECF No. 50-5] Ex. E. The Settlement provides $0.80 per unit in cash to each Class Member who makes a claim, up to the applicable per-household limits. Therefore, each Class Member who submitted a valid claim will receive 13% of the average cost of the Product based on current pricing

reported at Target.com and Walmart.com, [ECF No. 50-5] Ex. E, as a refund in a case in which the best-case recovery would have been 13.22% accepting Plaintiff's damage model.

Following the mathematical calculation provided by Plaintiff, Class Counsel negotiated a settlement for the Class that offered them on average 98.29% of Plaintiff's damage model. Plaintiff also provided evidence that some retailers other than Target and Walmart offered the Products at higher prices. The highest price found at a national retailer (Walgreens) for the Products was $10.99 per unit. *See* [ECF No. 50] at 12. Even at $10.99 per unit, the settlement negotiated by Plaintiff and Class Counsel amounted to 55.05% of Plaintiff's damage model. *Id.* at 12-13.

Regardless of whether the recovery equates to 98.29% or 55.05% of Plaintiff's damage model, the cash benefit per unit under the Settlement is excellent and well within the range of what would be considered fair, reasonable, and adequate relief considering the risk of continued litigation. This finding is bolstered by the obvious conclusion that mathematically it would not make sense for Defendant to concede more than it did. The settlement range is driven by a mathematical model used to calculate the unit price and the value of the missing cups. Considering the dueling laboratory results and risks of litigation, the value provided by the monetary portion of the Settlement constitutes a superior rate of recovery for the Class. Additionally, the Court notes the two-tier approach adopted in the Settlement Agreement provides a valuable benefit to the Class, because individuals who did not have proof of purchase were still able to benefit under the Settlement.

The Settlement also provided Programmatic Relief to the Class. The Court finds the Programmatic Relief, outlined in detail in paragraph 5.1 of the Settlement, provided significant value for Class Members separate and apart from any monetary relief. The Court also finds that

Defendant would not have implemented the labeling changes required by the Settlement had Plaintiff not brought this lawsuit.

The value associated with the labeling changes can also be mathematically calculated. For the 52-week period ending on May 31, 2021, Defendant sold approximately 69,500,000 units of the Product in the United States. *See* [ECF No. 50] at 8. In the Settlement, Defendant agreed that a compromise payment in the amount of $0.80 per unit was appropriate to compensate Class Members for the damage or loss they suffered because of purchasing the Products, which provided fewer cups of coffee than represented on the Product label. Using $0.80 per unit as the damage amount or loss avoided by each Class Member on future purchases of the Product; estimating approximately 69,500,000 units as the number of units sold in the United States each year; and limiting the benefit to only the two-year period of Programmatic Relief mandated by the Settlement—the Programmatic Relief is valued at approximately **$111,200,000.00** (that is $0.80 × approx. 69,500,000 units/year × 2 years). It is also important to point out that Class Members do not need to file a Claim Form to receive the benefits of the Programmatic Relief, which provides an additional value to the entire Class.

In summary, this case is unique in that the Parties have arrived at a straightforward damage calculus based on simple arithmetic rather than expert opinion: the label of the product promised a certain number of cups of coffee could be brewed following the label directions, but Plaintiff's laboratory testing showed that, on average, 13.22% *fewer* cups can be brewed than promised. The damage calculus is therefore simple: average purchase price × 13.22%. It is analogous to buying a can of eight ready-to-bake biscuits, but upon opening the can discovering that there are only seven biscuits. The damages are 1/8th of the purchase price. The simplicity of the damage model in this Action, likewise, simplifies the calculation of the value of the Programmatic Relief to the Class.

Thus, based on the record before the Court, Plaintiff and Class Counsel negotiated a benefit of approximately $111,200,000 + $16,000,000—approximately **$127,200,000** to the Class.

### D. The Complexity, Expense, and Duration of Litigation

The Court acknowledges that delay in providing Class members with a remedy is an important factor to consider. If this Action were tried to finality, it would likely be years before a final resolution, meaning it would also be years before the Class would receive any benefit. In *Colourpop Cosmetics*, this Court noted that the length of time it would take to obtain relief is a key factor in evaluating the reasonableness of a settlement, and it concluded that the immediate benefit provided by a settlement—compared to the time required to litigate class actions involving complex claims and defenses—weighs in favor of deeming a settlement fair, reasonable, and adequate. *See* 2020 WL 5848620 at *5.

In this Action, evidence established that both sides have been vigorously represented by their respective counsel and have invested substantial time and incurred substantial expenses. There is no doubt that the time and expense of continuing the litigation would significantly increase costs. The costs of conducting additional and further discovery would be substantial. Experts would need to be involved, produce reports, and be deposed, likely resulting in additional motion practice. The substantial work that awaited both Parties if litigation continued militates in favor of a relatively early resolution.

In summary, continued litigation would have involved substantial delay and expense. Plaintiff would have been required to succeed at the class certification stage, face the prospect of interlocutory review of any Order granting class certification, a motion for summary judgment, a trial on the merits, and potentially a post-judgment appeal. The uncertainties and delays from this process would have been significant. Given the many risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents an

abundantly fair compromise. *See, e.g., Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### E.  The Lack of Opposition to the Settlement, Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members

The Court finds that the lack of opposition to the settlement, the opinions of Class Counsel, the Plaintiff, and absent settlement class members all favor approval.  There was no meaningful opposition to the Settlement, and zero Class members excluded themselves from the Settlement. *See* [ECF No. 49-3] ¶ 22.  There were 41,479 class members who submitted claims, and the Administrator determined that 39,331 were valid claims.  There was only one potential "Objection," which, for the reasons discussed *infra* at Section III, the Court strikes as invalid and alternatively overrules as meritless.

The lack of opposition weighs strongly in favor of the Court's approval of the Agreement. This Court, like others, considers the reaction of the Settlement Class to the proposed settlement to be an important indicator as to its reasonableness and fairness.  A low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.  *Braynen v. Nationstar Mortg., LLC, et al.*, No. 14-20726, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015).  The lack of opposition to the Settlement supports the conclusion that the Settlement is fair, reasonable, and adequate and deserves final approval.  *See Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *3-4 (S.D. Fla. Dec. 17, 2014); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *3-4 (S.D. Fla. Oct. 24, 2014).

The Court also appropriately relied upon the judgment of the parties' experienced counsel, who strongly endorsed the Settlement. *See* [ECF No. 49-3] ¶ 20. The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also In Re Domestic Air Transp. Antitrust Litig*, 148 F.R.D. 297, 312-13 (N.D. GA 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"); *Colourpop Cosmetics*, 2020 WL 5848620 at *7 (same). Additionally, as explained above, the Court is independently assuaged that there was no fraud or collusion associated with the Settlement.

### F. The Stage at Which Settlement was Achieved

The Court finds the factual record was sufficiently developed to enable class counsel to make a reasoned judgment concerning the settlement. In evaluating this factor, the Court considers the degree of case development that class counsel has accomplished prior to settlement, to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *Colourpop Cosmetics*, 2020 WL 5848620 at *5 (citing *United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998)). However, the law is clear that early settlements are to be encouraged and only some reasonable amount of discovery should be required to make these determinations. *Id.* (citing *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992)).

Under this precedent and the evidence presented, the Court finds that the Parties were well-positioned to confidently evaluate the strengths and weaknesses of their claims, as well as the prospects for success at trial and on appeal, because of the extensive investigation and informal discovery they conducted prior to reaching a settlement. The Court also finds that Class Counsel's evaluation of the strengths and weaknesses of Plaintiff's claims was informed by their successful

representation of a different class of consumers against other ground coffee manufacturers in a case involving very similar facts. That case, *Becker, et al. v. Massimo Zanetti Beverage, US, Inc., et al.*, No. 20-00569 (W.D. Mo.), was resolved on a class basis and received final approval in November 2020. The parties entered settlement negotiations only after extensive investigation of the facts and law. *See* [ECF No. 49-3] ¶¶ 6-9, 12.

Class Counsel conducted an extensive and comprehensive pre-suit investigation, including a wide-ranging analysis of the products and claims at issue; thoroughly researched the law and facts pertinent to Plaintiff's claims and any potential defenses; and assessed the risks of prevailing on each of the respective claims on pre-trial motions and at trial. In addition, the Parties engaged in an exchange of confidential information, including sensitive business information, which helped shape the Settlement terms. Representatives of the parties also held numerous teleconferences, wherein they engaged in a further exchange of information and evaluation of the claims at issue.

In sum, although it may appear the matter settled early, the parties conducted a tremendous amount of behind-the-scenes investigation and pre-suit discovery. These efforts provided Plaintiff and Class Counsel with sufficient information to thoroughly analyze the strengths and weaknesses of the case and, subsequently, to negotiate and finalize the Settlement proposed to the Court.

## III.     The Court Strikes and Overrules the Sole Objection to the Settlement.

On January 19, 2021, the Court entered an Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class, which outlined procedural requirements for submitting a valid objection. *See* [ECF No. 41] at 9, ¶ 3. The requirements were appropriate and within the Court's broad discretion to manage class actions and enable the efficacious administration of proceedings. *See In re Equifax*, 999 F.3d at 1269. The requirements imposed were not burdensome. They simply required Class members to provide clerical information necessary to process their claims. *See* [ECF No. 41] at 9, ¶ 3.

In conformity with the holding in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), the Court required that Plaintiff's application for attorneys' fees be submitted prior to the deadline for filing objections. *See* [ECF No. 41] at 12. Additionally, the Court satisfied its fiduciary capacity with respect to vetting the Plaintiff's Motion for Attorneys' Fees, as described in *Johnson*, by preparing a detailed Order Setting Agenda for Final Approval Hearing. *See* June 7th Order [ECF No. 48]. The June 7th Order directed the parties to be prepared to address certain issues at the Final Approval Hearing, many of which related to the attorneys' fees sought by Plaintiff. *Id.* On June 17, 2021, Plaintiff filed written responses to the issues identified in that Order, which provided detailed responses to the Court and permitted the Court to vet Plaintiff's fee application thoroughly. *See* [ECF No. 51].

Only one class member, Dr. David Tribula, objected to the Settlement. *See* [ECF No. 46] ("Objection"). The Court strikes Dr. Tribula's Objection for failing to comply with the procedural requirements set forth in the Court's Preliminary Approval Order [ECF No. 41]. Dr. Tribula also failed to attend the duly noticed Final Approval Hearing, even though he stated in his Objection that he would do so. *See* [ECF No. 46]. His failure to appear would provide sufficient grounds alone to strike his Objection.

Dr. Tribula also failed to provide a detailed statement of his objection(s), including the grounds for his objection(s) as required by paragraph (d) of the Court's Preliminary Approval Order [ECF No. 41]. Dr. Tribula's Objection is more akin to a letter merely making a general statement that Class Members should receive more, and the attorneys should not receive anything. This conclusory opinion does not constitute a "detailed statement" of his Objection, and Dr. Tribula did not provide any grounds substantiating his Objection. Dr. Tribula affirmatively states in his Objection: "I do not have any documents," which confirms there is no detailed statement of objections beyond what is said in his one-page Objection. *See* [ECF No. 46].

Dr. Tribula also failed to provide "[a] statement of his/her membership in the Settlement Class, including all information required by the Claim Form." *See* [ECF No. 41]. The Claim Form approved by the Court required a Tier 1 claimant, as Dr. Tribula claimed he was, to provide information about the number of products purchased and where those products were purchased. Below is the Tier 1 section of the Claim Form, as approved by the Court:

Tier 1 Benefit is available for Settlement Class Members who purchased Maxwell House or Yuban branded ground coffee Product(s) during the Class Period and do not have valid Proof of Purchase. If you check the box below, then you may recover $.80 per Unit purchased, up to a maximum of 6 Units per Household, for a maximum reimbursement of up to $4.80 per Household. The actual amount paid to Settlement Class Members may be reduced and adjusted depending on the number of Valid Claims submitted in Tiers 1 and 2.

| **Attestation** |
|---|

☐   I purchased Products during the Class Period.

1.   I purchased the following types of Products:

|  |  |  |  |  |
|---|---|---|---|---|
| Bricks | ☐ Yes | ☐ No | _____ | [# of units] of Product(s) |
| Bags | ☐ Yes | ☐ No | _____ | [# of units] of Product(s) |
| Cans | ☐ Yes | ☐ No | _____ | [# of units] of Product(s) |
| Jars | ☐ Yes | ☐ No | _____ | [# of units] of Product(s) |
| All the Above | ☐ Yes | ☐ No | _____ | [total # of units] of Product(s) |

2.   I purchased the Products at the following retailers:

Dr. Tribula did not provide this information. In addition, the Claim Form also required a signed certification under penalty of perjury that (1) all information provided "is accurate and complete to the best of my knowledge, information and belief"; (2) that the objector is a Class Member; and (3) that the objector did not purchase or acquire the Products for resale. Dr. Tribula failed to comply with the Court's Preliminary Approval Order by failing to provide a certification of any of these facts under penalty of perjury.

Lastly, Dr. Tribula did not provide a list of any other objections he has submitted to any other court in the United States in the previous five (5) years, or, alternatively, he did not provide any affirmative statement that he has not objected to any other class action settlement in any court in the United States in the previous five (5) years. *See* [ECF No. 41]. Because Dr. Tribula failed

to comply with the Court's Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class, this Court strikes his Objection as invalid.

Nonetheless, in an abundance of caution and in fairness to Dr. Tribula, the Court also reaches the merits of his Objection that the Settlement does not provide a significant benefit to the Class and only benefits the attorneys. *See* [ECF No. 46]. After conducting a detailed review of Dr. Tribula's Objection and Plaintiff's Opposition to Dr. Tribula's Objection [ECF No. 50], the Court overrules Dr. Tribula's Objection on the merits.

The Settlement, including the proposed attorneys' fee, is fair, adequate, and reasonable, and supported by an analysis of the factors set forth in Rule 23(e)(2). As addressed in detail in this Order, the Settlement provides outstanding benefits to the Class in the form of both Programmatic Relief and direct monetary compensation provided to and for the Class. Specifically, the recovery is supported mathematically by a damage model that yields between 55.5% on the low end and 98.29% on the high end of the spectrum (assuming Plaintiff's best day in Court) based on the laboratory testing performed by Plaintiff's expert.

This recovery for the Class is particularly valuable when viewed against the potential for a defense verdict or a much lower damage calculation if the Court or jury had found Defendant's expert's theory—that the Products were not short any amount or were short by a minimal amount (*i.e.*, 5% or less)—compelling. The Settlement also provided valuable protection for Class Members by providing monetary recovery for members who did not have proof of purchase. Lastly, the Settlement provided a value to all Class Members in the form of the Programmatic Relief, requiring a label change that Defendant would not have agreed to absent the Agreement.

At its core, Dr. Tribula's Objection is really a criticism of negative-value class actions. But that is not the case here. Any class action involving a low-cost consumer item will result in a payment to individual class members that is small in comparison to the attorneys' fees requested

by class counsel. This is not because class counsel are requesting exorbitant fees, but rather because the damage to each class member is small. These are precisely the type of claims for which class actions are particularly suited—if these claims could not be brought as class actions, they would never be brought at all. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *Berman v. GM, LLC*, No. 18-14371, 2019 WL 6163798, at *10-11 (S.D. Fla. Nov. 18, 2019) ("Each individual Class Member's damages . . . is too small to warrant individuals taking on the cost and burden of litigating against a large corporate defendant like GM"); *Deas v. Russel Stover Candies*, No. 04-00491, 2005 WL 8158201, at *8 (N.D. Ala. Dec. 22, 2005) ("In this matter, many of the candies at issue cost consumers less than a dollar or two. As such, **this is exactly the type of dispute class actions were created to govern**.") (emphasis added).

As established by the record before this Court, Plaintiff and her counsel have provided a benefit of approximately $127,200,000 to the Class, consisting of approximately $111,200,000 in Programmatic Relief plus the $16,000,000 monetary fund. From this Class Counsel seek $3,900,000 in attorneys' fees, expenses, and costs. The $3,900,000 amounts to 3.1% of the total value made available to the Class and 24.4% of the allotted monetary fund. The Court finds the Settlement provided a significant benefit to the Class and the attorneys' fees requested are reasonable for the reasons addressed below; thus, Dr. Tribula's Objection is overruled.

## IV.     The Settlement Class Satisfies Rule 23.

To certify a class all four requirements in Rule 23(a) must be satisfied: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law

or fact common to the class"; (3) the class representatives' claims or defenses must be "typical" of the class's claims or defenses; and (4) the class representatives must "fairly and adequately" protect the interests of the class. *In re Equifax*, 999 F.3d at 1289-90 (citing Fed. R. Civ. P. 23(a)); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

The class action must also satisfy one of the three parts of Rule 23(b). *In re Equifax*, 999 F.3d at 1290. Rule 23(b)(3) requires that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action as part of the preliminary approval of the Settlement. *See* [ECF No. 41]. The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23 have been satisfied, for settlement purposes only, for Plaintiff and each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiff are typical of the claims of the Settlement Class she seeks to represent; (d) Plaintiff has and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any question affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

**A. Numerosity**

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of tens of thousands of individuals/households, located throughout the United States, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789

F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). To satisfy this requirement, a plaintiff is not required to allege the exact number and identity of the class members. Instead, she must establish only that joinder is impracticable through some evidence or a reasonable estimate of the number of purported class members. *Anderson v. Bank of the S.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

As a rule of thumb, in the Eleventh Circuit, "less than twenty-one is inadequate, more than forty [is] adequate, with numbers between varying according to the other factors." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation and internal quotations omitted). Plaintiff has presented a reasonable estimate that the number of purported Class Members far exceeds forty members, located throughout the United States, with over forty-one thousand (41,000) claims submitted to the Settlement Administrator, thereby clearly establishing that joinder is impracticable and that numerosity has been satisfied. *See* [ECF No. 49-2] ¶ 26.

### B. Commonality and Typicality

"The threshold for commonality is not high"; indeed, "a single common question of law or fact is sufficient to satisfy the commonality requirement as long as it affects all class members alike." *Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 691 (S.D. Fla. 2006). The typicality requirement is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based on the same legal or remedial theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Commonality and typicality are satisfied with respect to the Settlement because there are issues of fact and law that are common to the Class, and Ms. Ferron's and the Class Members'

claims arise from the same event or course of conduct by Defendant (*i.e.*, the alleged mis-labeling of the Products). In addition, the conduct and facts related to Defendant's manufacturing and labeling of the Products give rise to the same legal theories, and the underlying facts are substantially similar. *Id.* at 1337.

### C. Adequacy

The Class Representative and Class Counsel have adequately represented the Class, having achieved a common nucleus of Settlement benefits that will provide important and immediate monetary and injunctive relief for all Class Members.

Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Defranks v. Nastygal.com USA, Inc*., No. 19-23028, Order Certifying the Settlement Class and Preliminarily Approving Class Action Settlement [ECF No. 36] at 4 (S.D. Fla. June 7, 2020); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). As to Plaintiff, the Court finds her interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.

Further, Plaintiff submitted a Declaration in Support of Motion for Final Approval of Class Action Settlement [ECF No. 49-4], establishing her standing, membership in the Settlement Class, submission of a valid Claim Form related to her purchase, and active involvement in the litigation and settlement. Plaintiff and the Settlement Class are also represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions and who procured a valuable Settlement for the Class. *See* [ECF No. 49-3].

### D. Ascertainability

The ascertainability inquiry is satisfied where membership is capable of being determined; specifically, a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021). The Settlement Class is defined to include "[a]ll Persons who purchased any Products in the United States during the Class Period." *See* Agreement [ECF No. 49-1] at 11, Section II, 2.49. Excluded from the Settlement Class are: (a) Persons who purchased or acquired any Products for resale; (b) the Released Parties; (c) all Persons who file a timely and valid Opt-Out; (d) Plaintiff's Counsel and Defendant's Counsel; (e) federal, state, and local governments (including all agencies and subdivisions, but excluding employees not otherwise excluded under the Agreement); and (f) the judicial officers and courtroom staff overseeing the Action. *Id.*

The Court finds the Settlement Class is ascertainable because the criteria for class membership is objectively defined, making self-identification by Class Members possible and membership in the class is capable of determination by others as well.

### E. Predominance and Superiority

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies Rule 23(b)(3)'s predominance factor because liability questions common to all Settlement Class members substantially outweigh any possible issues, such as damages, that are individual to each Settlement Class member.

The bulk of the effort in this Action would have been focused on the liability issues that are common to all Class Members. Moreover, resolution of thousands of claims in one action is

far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Moreover, in the absence of a class action, the potential expense of the litigation in relation to the relatively small recovery amount for each Class Member would likely prevent most, if not all, injured parties from initiating a lawsuit. Hence, judicial economy and efficiency would dictate again that all such possible claims be tried in one class action lawsuit, rather than allowing numerous injured parties to abstain from vindicating their rights in court.

## V.     The Court Grants Class Counsel's Application for Attorneys' Fees and Expenses.

Class Counsel requests a fees and costs award of $3,900,000.00, which is equal to approximately 24.4% of the monetary fund provided by the Settlement and 3.1% of the total value of the Settlement. The parties negotiated and reached agreement regarding attorneys' fees and costs only *after* agreeing on all other material terms of the Settlement, and as part of a mediation process overseen by Judge Andersen, a respected mediator and former U.S. District Judge. Only a single individual, who did not establish that he was a part of the Settlement Class, has objected to Class Counsel's fee request. His objection did not take into consideration the significant value the Settlement provided to the Class as a result of the work performed by Class Counsel, and this Court has stricken and alternatively overruled that objection.

The Court analyzed Class Counsel's fee request under *Camden I Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) and Rule 23(e). As addressed below, after considering all these factors, the Court finds substantial support in the record for the requested award of attorneys' fees and costs. The Court hereby approves Class Counsel's request for attorneys' fees, costs, and expenses, and awards Class Counsel a total of $3,900,000.00 as reasonable attorneys' fees, expenses, and costs. The award of attorneys' fees and costs to Class Counsel shall be paid from the Settlement Fund within the time and manner set forth in the Settlement Agreement.

**A. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.**

The Settlement provides a fair, adequate, and reasonable settlement with significant benefits to the Class. The benefits are described in detail in the Settlement, and included both cash and injunctive benefits, which injunctive benefits have monetary value to the Class Members. Specifically, the Settlement secures monetary relief for the benefit of the class, in the form of a $16,000,000.00 class settlement fund, which provides up to $4.80 per household to Class Members who do not have Proof of Purchase, and up to $25.00 per household to Class Members who provide valid Proof(s) of Purchase. Additionally, the Settlement provides significant Programmatic Relief, in the form of label changes, for the benefit of the Class.

It is well-established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Sunbeam Sec. Litigation*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (same); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013) ("This Court has recognized consistently that someone who recovers a common fund for the benefit of persons other than himself is due a reasonable attorney's fee from the fund as whole.") (internal quotation marks omitted). "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I*, 946 F.2d at 771.

The common benefit doctrine is applied the same way to claims-made settlements. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("[P]roperly understood a claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (internal citations omitted). For that reason, in the Eleventh Circuit, class counsel

is awarded a percentage of the funds made available through a settlement, not the amount of funds actually paid out.[5]

In determining the value of the settlement fund, courts consider the value of any nonmonetary relief in addition to the monetary relief. *See Poertner*, 618 F. App'x at 628; *Montoya v. PNC Bank, N.A.*, No. 14-20474, 2016 WL 1529902, at *14-15 (S.D. Fla. Apr. 13, 2016); *Hamilton*, 2014 WL 5419507 at *4-5 ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide.").

In *Camden I*, which is the controlling authority regarding attorneys' fees in the Eleventh Circuit, the court held that the percentage of the fund approach (versus the lodestar approach) is the better reasoned approach in a common fund case. *Camden I*, 946 F.2d at 774. The Court has discretion in determining the appropriate reasonable fee percentage with respect to the common fund. *See Sunbeam*, 176 F. Supp. 2d at 1333 ("There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case.") (quoting *Camden I*, 946 F.2d at 774). The *Camden I*

---

[5] *See, e.g., Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 19-00550, 2020 WL 2517766, at *5-6 (M.D. Fla. Apr. 23, 2020) (explaining that the percentage of the fund analysis applies to claims-made settlements and that the "percentage applies to the total fund created, even where the actual payout following the claims process is lower."); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("Instead, to determine attorneys' fees in a case involving a class action settlement that created a reversionary common fund, [the Eleventh Circuit] held that 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. . . . The percentage applies to the *total fund created*, even where the actual payout following the claims process is lower.") (emphasis added) (internal citations omitted); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860, at *8-9 (S.D. Fla. Nov. 17, 2017) (same); *Wilson v. EverBank*, No. 14-22264, 2016 WL 457011, at *18-20 (S.D. Fla. Feb. 3, 2016) ("[T]he Eleventh Circuit was clear in *Poertner*, calculating class counsel's fees as a percentage of the value of the claims actually paid to class members *is not* the appropriate method for awarding fees and expenses in the Eleventh Circuit.") (emphasis added); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *7-8 (S.D. Fla. Oct. 24, 2014) ("In the Eleventh Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. . . *The percentage applies to the total benefits provided*, even where the actual payments to the class following a claims process is lower.") (emphasis added) (internal quotation marks omitted); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (same).

Court held that the majority of common fund fee awards should fall between 20% and 30% of the fund, with a 25% fee award as a "benchmark" percentage fee award. 946 F.2d at 774-75; *see also In re Equifax*, 999 F.3d at 1304 (recognizing the average percentage award in the Eleventh Circuit as "roughly one-third") (quoting *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *1-2 (S.D. Fla. Sept. 26, 2012)).

The Eleventh Circuit has provided a set of factors to be considered when determining the reasonable percentage to award as an attorneys' fee to class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of her/his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines and are not exclusive. *See Sunbeam*, 176 F. Supp. 2d at 1333 ("Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.") (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors and the facts unique to this case support the reasonableness of the requested attorneys' fees and costs award.

**B. As Applied to this Action, the *Camden I* Factors Demonstrate the Requested Fee is Reasonable and Justified.**

1.   <u>The Time and Labor Required</u>

The work that was demanded of class counsel was extensive. The attorneys have expended substantial effort representing the Plaintiff without compensation. Prior to filing suit and during the pendency of the case, Class Counsel conducted a detailed investigation and analysis of the Products, retained an independent laboratory to conduct extensive testing of the Products, worked with other laboratories and Defendant to evaluate all results of testing, and engaged in thorough and extensive investigation into the facts, ultimately fashioning an appropriate remedy to serve the best interests of the Class. *See* [ECF No. 45-1]. The investigation and informal discovery included: (i) engaging in a substantial pre-suit investigation for months regarding the actual amount of coffee in the Products compared to the represented amounts, including working with multiple independent laboratories and consultants; (ii) researching the applicable law with respect to the claims asserted and potential defenses thereto; (iii) coordinating with six law firms representing purchasers of the Products in multiple suits filed in various jurisdictions throughout the nation; (iv) exchanging confidential business and technical information regarding the Products; and (v) engaging in extensive discussions and negotiations with defense counsel, including a full day mediation session with Judge Andersen, as well as post mediation settlement conferences that stretched over multiple weeks and included dozens of telephonic conferences (some involving the mediator). *Id.*

Moreover, the Court reviewed the answers submitted in response to its written questions. The answers to those questions informed the Court of the hours worked by Class Counsel and the blended hourly rate of the lawyers working on certain key tasks related to this Settlement. *See* [ECF No. 51]. This information provided in response to the Court's written questions further

supports a finding that the award of fees, expenses, and costs is reasonable given the time and labor required. *Id.*

> 2. The Novelty and Difficulty of the Relevant Questions and the Skill Required

Plaintiff brought this case based on allegations that Defendant deceptively and unlawfully labeled, packaged, and marketed the Products as containing enough coffee such that the Products make a range of cups of coffee when following the brewing instructions on the Products' labels. According to Plaintiff, contrary to these representations, the Products do not contain enough ground coffee to make the stated number of cups when following the brewing instructions on the Products' labels.

As discussed, *supra*, prior to filing suit and during the pendency of the case, Class Counsel conducted a detailed investigation and analysis of the Products, retained an independent laboratory to conduct extensive testing of the Products, coordinated with other laboratories to confirm results, engaged in thorough and extensive investigation into the facts, and fashioned an appropriate remedy to serve the best interests of the Class. The case required investigation and a mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond, at mediation and during negotiations, to a host of legal defenses. *See* [ECF No. 45-1].

Additionally, Defendant was represented by the prominent and well-respected national law firms of Jenner & Block LLP and Kenny Nachwalter, P.A., which are well-versed and skilled in class action defense. *Id.* In evaluating the quality of representation and the results achieved by Class Counsel, the Court considered the skill of opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654; *see also Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results."). This class action case against Defendant required substantial advanced planning, strategic skills,

imagination, resourcefulness, and management abilities to match a highly qualified, experienced, and formidable opposition. The prosecution and settlement of this litigation required a very high degree of competence, experience, and ability by Class Counsel. *See* [ECF No. 45-1].

### 3. Preclusion of Other Employment by Class Counsel

The Court finds Class Counsel devoted significant time to this Action that could have caused them to forego other employment. [ECF No. 45-1] ¶15.

### 4. Risk Associated with Contingent Representation

The risk of non-payment and not prevailing was significant. Plaintiff would have faced challenges at the class certification stage and could have faced dismissal based on standing. There were also merit-based issues with the differing lab-results which would have led to a "battle of the experts" if the case had been litigated. Class Counsel undertook this action on a contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the litigation would yield no recovery and leave them uncompensated. *See* [ECF No. 45-1]. The risk of no recovery in complex cases of this type is very real, with numerous class actions resulting in plaintiff's counsel receiving no remuneration whatsoever despite their diligence and expertise.[6]

Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. While Class Counsel have successfully resolved this matter, the outcome achieved was far from certain at the outset. An attorneys' risk is perhaps the

---

[6] *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming trial court's grant of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 based on a 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment notwithstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed—after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) (judgment for $145 million overturned after years of litigation and appeals), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973).

foremost factor in determining an appropriate fee award, and the relevant risk profile must be evaluated from the standpoint of plaintiff's counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight. *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2008 WL 649124, at *13 (S.D. Fla. Jan. 31, 2008). Indisputably, when Class Counsel undertook the prosecution of this case at the outset, on a contingency fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *See* [ECF No. 45-1].

### 5. The Results Obtained

The Settlement provides important and significant monetary and programmatic relief for the Class, both of which are properly considered in determining the results obtained for the benefit of the Class. The Settlement secures monetary relief for the benefit of the class in the form of two Tiers. Under Tier 1, Class Members who do not have valid Proof of Purchase may recover $.80 per Unit purchased, up to a maximum of six Units per household. This provides a monetary benefit of up to $4.80 per household to Class Members who do not have Proof of Purchase. Under Tier 2, Class Members who provide valid Proof(s) of Purchase may recover $.80 per Unit purchased for the number of Units for which a valid Proof of Purchase has been provided, up to a maximum reimbursement of twenty-five dollars ($25.00) per Household. Additionally, Class Counsel obtained significant programmatic relief, in the form of a label change, for the benefit of the Class. The Court finds that the label changes for thirty-five (35) separate and distinct products is a significant non-monetary benefit provided by the Settlement.

When taking into account the monetary and injunctive relief provided by the Settlement, the total value of the Settlement to the Class Members is approximately $127,200,000. This is a significant benefit in an action of this type.

6.        The Experience, Reputation, and Ability of the Attorneys

The Court finds Class Counsel were experienced, reputable, and capable attorneys.  This conclusion is further substantiated by the valuable benefits the Settlement provided to Class Members.

7.        Comparison to Fees Awarded to Similar Cases

Counsel's requested fee of $3,900,000.00, which is approximately 24.4% of the monetary settlement fund (not taking into consideration the significant value of the Programmatic Relief obtained for the benefit of the Class over the two-year programmatic relief period), is well within the range of fees typically awarded in similar cases.  When the value of the programmatic relief obtained for the benefit of the Class is combined with the monetary settlement fund, the requested attorneys' fees, expenses, and costs award represents substantially less than 24.4% of the overall value of benefits made available to the Class.

Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reasonable fees under the factors listed in *Camden I*.  *See, e.g.*, *Gevaerts*, 2015 WL 6751061 at *10 (finding that a request for 30% of a $20 million dollar fund was reasonable); *Wolff*, 2012 WL 5290155 at *5-6 ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one third.") (citing Circuit case law and listing comparable Southern and Middle District of Florida fee awards).  Finally, Class Counsel's fee request also falls within the range of awards in FDUTPA cases within this Circuit and elsewhere.  *See, e.g*., *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252-53 (S.D. Fla. 2016) (approving class counsel's attorneys' fees request of 33% of the Settlement Fund, or $1,650,000.00); *Numismatic*, 2008 WL 649124 at *13 (approving an award of almost 30% of the cash portion of the settlement in a FDUTPA class action).

## V.    Final Approval of the Class Action Settlement

The Settlement Agreement is finally approved in all respects as fair, reasonable, and adequate.  The terms and provisions of the Settlement Agreement, including all Exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the parties and the Settlement Class Members.

### A.  Administration of the Settlement

The parties are hereby directed to implement the Settlement Agreement according to its terms and provisions.  The Administrator is directed to provide Claim Settlement Payments to those Settlement Class Members who submit valid, timely, and complete Claims.

### B.  Release of Claims

Upon entry of this Final Approval Order, all members of the Class who did not validly and timely submit Requests for Exclusion in the manner provided in the Agreement shall, by operation of this Final Approval Order, have fully, finally, and forever released, relinquished, and discharged Defendant and the Released Parties from the Released Claims as set forth in the Settlement Agreement.

Furthermore, all members of the Class who did not validly and timely submit Requests for Exclusion in the manner provided in the Agreement are hereby permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting or continuing, either directly or in any other capacity, either individually or as a class, any action or proceeding in any court, agency, arbitration, tribunal or jurisdiction, asserting any claims released pursuant to the Settlement Agreement, or seeking an award of damages, fees or costs of any kind or nature whatsoever and pursuant to any authority or theory whatsoever, relating to or arising

from the action or that could have been brought in the action and/or as a result of or in addition to those provided by the Settlement Agreement.

The terms of the Settlement Agreement and of this Final Approval Order, including all Exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits maintained by Plaintiff and all other Settlement Class Members, or those people that failed to validly and timely submit Requests for Exclusion, as well as their heirs, executors and administrators, successors, and assigns.

The Releases, which are set forth in Section XII of the Settlement Agreement [ECF No. 49-1], and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Approval Order; and the Released Parties (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Persons (as that term is defined in the Settlement Agreement) from all Released Claims (as that term is defined in the Settlement Agreement). This release, and the terms set forth herein are intended to be construed as broadly as possible as permitted by law.

> 12.2 The Releasing Parties hereby fully release and forever discharge the Released Parties from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, asserted or unasserted, claims, demands, liabilities, rights, debts, obligations, liens, contracts, agreements, judgments, actions, suits, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, penalties, fees, attorneys' fees, and/or obligations of any nature whatsoever, whether known or unknown, whether at law or in equity, whether accrued or unaccrued, whether previously existing, existing now or arising in the future, whether direct, individual, representative, or class, of every nature, kind and description whatsoever, based on any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, relating in any way to any conduct prior to the date of the Preliminary Approval Order and that: (a) is or are based on any act, omission, inadequacy, misstatement, representation (express or implied), harm, matter, cause, or event related to any Product; (b) involves legal claims that have been asserted in the Action or could have been asserted in the Action; or (c) involves the advertising, marketing, promotion, purchase, sale, distribution, design, testing, manufacture, application, use, performance, warranting, packaging of the Products or Labeling (collectively, the

"Released Claims"). The Releasing Parties acknowledge that, in releasing the Released Claims, they expressly waive all rights under Section 1542 of the California Civil Code (and any similar law), which Section provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge and agree that personal injury claims are not part of any of the facts alleged by Class Representatives in this Action and that personal injury claims are not included within the Released Claims.

12.3 Nothing herein is intended to release: any claims that any governmental agency or governmental actor has against the Released Parties, any claims asserted for acts or omissions outside of the Class Period or any claims on behalf of any other entity other than the Releasing Parties.

12.4 Each of the Releasing Parties shall forever refrain, whether directly or indirectly, from instituting, filing, maintaining, prosecuting, assisting with or continuing any suit, action, claim, or proceeding against any of the Released Parties in connection with any of the Released Claims (a "Precluded Action"). If any of the Releasing Parties does institute, file, maintain, prosecute, or continue any such Precluded Action, Plaintiff and Class Counsel shall cooperate with the efforts of any of the Released Parties to obtain dismissal with prejudice. The releases provided for herein shall be a complete defense to, and will preclude, any Released Claim in any suit, action, claim, or proceeding. The Final Approval Order shall further provide for and effect the release of all known or unknown claims actions, causes of action, claims, administrative claims, demands, debts, damages, costs, attorney's fees, obligations, judgments, expenses, compensation, or liabilities, in law or in equity, contingent or absolute, that the Released Parties now have against Plaintiff, Class Representatives, Class Counsel, or Plaintiffs' Counsel by reason of any act, omission, harm, matter, cause, or event whatsoever arising out of the initiation, prosecution, or settlement of the Action, except with respect to any breach of the terms of this Agreement by any of Plaintiff, Class Representatives, or Class Counsel.

## C.  No Admission of Liability

Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the

negotiations or proceedings connected with it, nor any of the documents or statements referred

therein or attached thereto, nor this Final Approval Order or any Order of this Court related in any

way to the Settlement, nor any of their terms and provisions, shall be construed as offered in

evidence as, received in evidence as, and/or deemed to be, evidence of a presumption, concession or an admission by Plaintiff, the Releasing Parties, any Settlement Class Member or any Released Party, of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or the deficiency of any claim or defense that has been, could have been, or in the future might be asserted in any litigation, or of any liability, fault, wrongdoing or otherwise of such Party.

### D.  Other Provisions of the Settlement Agreement

This Final Approval Order and the Settlement Agreement (including the Exhibits thereto) may be filed in any action against or by any Released Party (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

This action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against Plaintiff and all other Settlement Class Members, without fees or costs to any party except as otherwise provided herein.

### CONCLUSION

For the foregoing reasons, the Court: (1) grants final approval of the Settlement Agreement; (2) appoints Plaintiff, Kimberly Ferron, as class representative for this Settlement; (3) appoints as Class Counsel and Settlement Class Counsel Law Office of DeWayne Layfield, PLLC, Southern Atlantic Law Group, PLLC, and Law Office of Howard W. Rubinstein P.A.; (4) awards Class Counsel attorneys' fees, litigation costs, and expenses of $3,900,000, which is approximately 24.4% of the monetary Settlement Fund and 3.1% of the total value provided by the Settlement;

(5) directs Class Counsel, Plaintiff, and Defendant to implement and consummate the Settlement Agreement pursuant to its terms and conditions; (6) retains continuing jurisdiction over Plaintiff, the Settlement Class, and Defendant to implement, administer, consummate, and enforce the Settlement Agreement and this Final Approval Order; and (7) will separately enter Final Judgment dismissing this action with prejudice.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 13th day of July, 2021.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record